J. D. PAGE, RESPONDENT, v. THE UTAH COMMIS-SION, CONSISTING OF JERROLD R. LETCHER, ERASMUS W. TATLOCK, ALBERT G. NORRELL, HOYT SHERMAN, JR., GEORGE W. THATCHER, APPELLANTS.

1. ELECTIONS.—CANVASSING OF VOTES.—IRREGULARITIES IN RE-TURNS.—RE-COUNT.—Under 1 Comp. Laws, p. 324, § 256, pro-viding that the canvassing board "shall carefully examine the returns; and if no irregularity or discrepancy appear therein affecting the result of the election of any candidate, they shall accept said returns as correct." The fact that the "voted" registry list contains fewer names than the number of votes actually cast, is not an irregularity authorizing a re-count where the difference is less than the majority received by the successful candidate.

2. ID.—ID.—ID.—THE ELECTION OF MEMBERS OF THE CONSTITU-
TIONAL CONVENTION.—In the election of members of the con-
stitutional convention in San Pete county each voter was
entitled to vote for seven candidates. The voted registry list
showed that in case each voter had voted for the full number of
candidates, more votes would have been cast than the returns
showed had been cast for all the candidates collectively.
*Held*, that there was not an irregularity in the returns author-
izing a re-count, as all the voters may not have voted for the
full number of candidates.

3. ID.—ID.—ID.—ID.—MINISTERIAL POWERS.—MANDAMUS.— Under
1 Comp. Laws, p. 324, § 256, the canvassing board must decide
in the first instance whether there are irregularities in the
returns, and this decision is not subject to review by *man-*
*damus*, but the powers of the board under this section are
purely ministerial, notwithstanding the last section provides
that in case of irregularities affecting any person's right for
any office, that they may cause to appear before them any
persons whom they may deem proper and take their testimony
in relation thereto, for the reason that this clause is nugatory,
as it does not empower the board to render any decision or
take any action on the proof which it may receive.

4. ID.— ID.— ID.— ID.— ID.— EXERCISE OF JUDICIAL POWER BY
BOARD.—Notwithstanding every canvassing board must decide
in the first instance what are the returns of an election and
must determine that fact from the face of the returns them-
selves, this is not an exercise of judicial power and the board
may not capriciously reject returns for some imaginary or real
informality which does not destroy the character of the returns
as such, and in *mandamus* proceedings to compel the canvass-
ing board, the Utah Commission, to issue a certificate of elec-
tion, a finding of the board that there were irregularities in
the returns requiring a recount may be reviewed, as their
powers are purely ministerial.

5. ID.—ID.—ID.—UTAH COMMISSION.—Under § 9, the Act of Con-
gress of March 22, 1882, known as the "Edmunds Law," es-
tablishing the Utah Commission and providing that the canvass
of votes shall be returned to the board, the judges of the elec-
tion are to make the return of votes directly to the Utah
Commission.

6. STATUTORY CONSTRUCTION.—INTERPRETATION CONTEMPORANEOUS
WITH ENACTMENT.—In the interpretation of a statute, that con-

struction will be adopted which will make all its parts consistent, and in case of doubt that construction adopted by those charged with its execution immediately after it was enacted will have great weight with the court in determining the meaning of the statute.

7. ELECTIONS.—IRREGULARITIES IN RETURNS.—MANDAMUS PROCEEDINGS.—Where no irregularity appears on the face of the returns, *mandamus* will lie to compel the canvassing board to issue a certificate of election to one who appears therefrom to be elected.

8. ID.—ID.—ID.—SPECIAL PROCEEDINGS.—COSTS.—*Mandamus* to compel the canvassing board to issue a certificate of election is a special proceeding, under 2 Comp. Laws 1888, § 3684, so as to entitle plaintiff on a judgment in his favor to an allowance for costs, as of course.

(No. 573. Decided Feb. 23, 1895. 39 P. R. 499.)

APPEAL from the District Court of the Third Judicial District. Hon. George W. Bartch, *Judge.*

*Mandamus* proceedings upon the relation of J. D. Page against the Utah Commission, consisting of Jerrold R. Letcher, Erasmus W. Tatlock, Albert G. Norrell, Hoyt Sherman, Jr., and Geo. W. Thatcher. From a judgment granting a peremptory writ and from an order denying a new trial, defendants appeal. *Affirmed.* The opinion states the facts except that the last clause of § 256, 1 Comp. Laws 1888, p. 324, reads as follows: "They (canvassing board) may also cause to appear before them any persons whom they deem proper and take their testimony in relation to said election.   *   * "

*Mr. Parley L. Williams, Mr. H. P. Henderson* and *Mr. O. W. Powers,* for appellants.

It was the evident intention of Congress as expressed in the ninth section of the Edmunds Law to take the administration of the election laws out of the hands of the county court or the officers then administering them and

to place it in the hands of the Utah Commission. The casting of that duty upon the commission, carries with it the same right and authority as appertain to the county court before the passage of the Edmunds Law. The question of whether there are irregularities or discrepancies affecting the result arising in such canvass, is clearly to be determined by the officers. This marks clearly the distinction between our statute which does in this particular and under such circumstances devolve upon the board of canvassers the exercise of judgment and discretion, and statutes which require the board of canvassers to merely cast up the figures. Where there is an exercise of judgment and discretion, mandamus will not lie. The question then arises, is their duty ministerial?

Chase, Chief Justice, in *State of Mississippi* v. *Johnson,* 4 Wall. 498, says: "A ministerial act is one in respect to which nothing is left to discretion." In the same case, commenting on the cases of *Marbury* v. *Madison,* 1 Cranch. 137, and *Kendall* v. *Stokes,* 12 Pet. 527, in each of which it was declared that *mandamus* was the remedy afforded by law, Judge Chase said: "In each of these cases nothing was left to discretion. There was no room for the exercise of judgment." "A ministerial act may perhaps be defined to be one which a person performs in a given state of facts in a prescribed manner, in obedience to a mandate of legal authority without regard to the exercise of his own judgment upon the propriety of the act being done." *Flourney* v. *City of Jeffersonville,* 17 Ind. 169; S. C. 79 Am. Dec. 472; *Casualty Security Co.* v. *Fyler,* 60 Conn. 448; S. C. 25 Am. St. 337. The provisions of the statute regarding the writ of mandate are found in 2 Comp. Laws 1888, §§ 3330-31. They are an affirmance of the common law upon the subject. See *People* v. *Oles,* 3 Cal. 174; *Kimball* v. *Union Water Co.,* 44 Cal. 174. This writ was issued in cases where there is no plain, speedy or

adequate remedy at law. In this case other remedies are provided the petitioners by law. *First.* There are proceedings in the nature of a *quo warranto.* 2 C. L. 337. *Second.* Under the provisions for contesting certain elections. *Id.* §§ 3750, 3766. *Third.* Before the convention itself. It is clear that the canvassing board should, in cases of irregularity and discrepancy affecting the result, examine the ballots. Then whether the irregularities and discrepancies do affect the result is a matter for the exercise of judgment and discretion. *Mandamus* will not lie to control the exercise of judgment and discretion. High Extr. Legal Rem. (2d ed.) §§ 24, 34, 42, 43, 55, 56, 56*a*, 57; *U. S.* v. *Commissioner,* 5 Wall. 565; *American Cas. & Ins. Co.* v. *Fyler,* 60 Conn. 448, S. C. 25 Am. St. 337; *Decatur* v. *Paulding,* 14 Pet. 497, S. C. Curtis Dec. 13, vol. 10; *U. S.* v. *Guthrie,* 17 How. 304, S. C. 21 Curtis Dec. 509; *U. S.* v. *Seaman,* 17 How. 225, S. C. 21 Curtis, 470; *U. S.* v. *Black, Com. of Pen.,* 128 U. S. 40, especially at page 48; *Redgield* v. *Windon,* 137 U. S. 636; Spelling on Extr. Relief, vol. 2, §§ 1556, 1557, 1558.

*Messrs. Zane & Zane, Messrs. Miner & Hiles* and *Mr. C. W. Bennett,* for respondent.

The ninth section of the Edmunds Law, while there are three contentions as to its meaning, clearly means just what it says: The canvass and return of the votes shall be made directly from the judges of election to the Utah Commission, which shall take those returns and canvass them as any other canvassing board would canvass them. "To canvass the returns," makes the board simply a ministerial body. They must, of course, determine the genuineness and correctness of the returns, but when that is done, their duty is simply the ministerial one of adding up the result and certifying to it. 6 Am. & Eng. Ency.

310-313; Cooley Const. Lim. p. 784 and authorities cited.
If, then, the duty of the Utah Commission is ministerial,
*mandamus* lies to compel them to issue a certificate of
election which gives the delegate his *prima facie* right to
a seat in the convention. As to that, he has no adequate
remedy in the ordinary course of law. *Quo warranto* in
election contest does not lie because the convention judges
of the qualifications of its members and no court has
jurisdiction of a contest to determine the real right to the
office. Even if it did lie, it tries the title to the office
and not the right to the certificate, which is the right in
question. The contest before the convention is not a
remedy because that right determines the right of office
and not the right to the certificate. *Pacheo* v. *Beck*, 52
Cal. 3; *State* v. *Canvassers*, 17 Fla. 9; *State* v. *Canvassers*,
36 Wis. 498; *O'Terral* v. *Colby*, 2 Minn. 180; Re Election,
2 At. Rep. 341; High on Extr. Legal Rem. §§ 17, 56-60.

SMITH, J.

This was a proceeding in *mandamus* begun by the plaint-
iff against the defendants to compel the issuance to him
(the plaintiff) of a certificate of election as a delegate to
the constitutional convention soon to meet under the en-
abling act to form a constitution for the state of Utah.
The affidavit on behalf of plaintiff on which the alternate
writ was issued set out substantially that the plaintiff was
an elector duly registered in San Pete county, Utah terri-
tory, at the time of the general election held November 6,
1894, in said territory; that the defendants constitute the
board commonly known and called the "Utah Commis-
sion," the same being created under section 9 of an act of
Congress approved March 22, 1882, and commonly called
the "Edmunds Law;" that an election of delegates to the
constitutional convention for the proposed state of Utah
was legally held on November 6, 1894. It sets out in detail

that the judges of election were regularly appointed and qualified, and regularly received and canvassed the votes cast in San Pete county for election of the delegates to said convention. It was alleged that plaintiff was a candidate for delegate to said constitutional convention, and received a majority of the votes cast in said San Pete county for such office; that the judges of election made due and legal return of their canvass of the votes cast for the plaintiff to the defendants, who constitute the board of canvassers, as above stated; that there was no irregularity or discrepancy or disagreement appearing from the face of said returns; and that, by the face of the returns, the plaintiff was elected. It is then alleged that the defendants have completed their canvass of the votes, and have refused to issue to plaintiff any certificate of election, although the plaintiff has demanded the same, and that the plaintiff has no plain, speedy, or adequate remedy in the ordinary course of law. The alternate writ of mandate was issued, and contained the substance of the affidavit.

The defendants answered, and denied: *First,* that the plaintiff received a majority of the votes cast in San Pete county for delegate to the constitutional convention; *second,* denied that no irregularity, discrepancy, or disagreement appeared on the face of the returns, and alleged that there were irregularities, discrepancies, and disagreements that affected plaintiff's election, and alleged there was a disagreement as to the votes cast for plaintiff shown by the face of the returns; *third,* denied that their refusal to issue certificate of election to the plaintiff was wrongful or unlawful; *fourth,* denied that plaintiff was without remedy; and *fifth,* alleged that, discrepancies and irregularities appearing on the face of the returns, they have opened and canvassed the ballots, and that it is thus ascertained that plaintiff is not entitled to a certificate of election. Without setting out the findings of fact in this

opinion in detail, it is sufficient to say that the court found the issues in favor of the plaintiff on all contested questions, and especially found that there was no irregularity or discrepancy apparent upon the face of the returns, and granted a peremptory writ of mandate, requiring defendants to issue to the plaintiff the certificate of election as prayed for. A motion for a new trial was overruled, and the defendants appeal from the judgment and order denying a new trial. Several errors are assigned, but they may be grouped under three heads: *First,* that the evidence was insufficient to justify the judgment and decision of the court; *second,* the court erred in receiving any testimony on behalf of the plaintiff; and, *third,* the court erred in awarding a peremptory writ. We shall examine these assignments of error in the order stated.

The particular finding which is assailed as not supported by the evidence is the eighth, which is the finding, in effect, that there were no irregularities upon the face of the returns authorizing a recanvass of the ballots cast. We have carefully examined the evidence contained in the statement, including the original returns, which are made a part of it, and are unable to find any irregularities or discrepancies which in any way affect the result of the election of the plaintiff. The irregularities and discrepancies which defendants claim the returns disclose are as follows: The registry list, containing the word "Voted" opposite the names of certain voters, is compared with the poll list, or list of the names of voters made at the election, and they are found not to correspond in certain particulars, as follows: In the precincts of Chester, Ephram, Gunnison, and Moroni there is found to be an aggregate of 17 more names marked "Voted" than appear on the poll list or list of votes made at the election in these precincts; while in the precincts of Fairview, Fountain Green, Manti, Mt. Pleasant, and Spring there appears to be an

aggregate of 21 more names of voters on the poll list than there are names marked "Voted" on the registry list; and in only one case does there appear to have been any larger number of votes canvassed as shown by the tally sheets than the smallest number shown by either the voted registry list or the poll list, and this case occurred at Mt. Pleasant, where only 498 names are marked "Voted" on the registry list, while 3,500 votes were cast for candidates for delegates to the constitutional convention, which would be 14 votes in excess of the number that could have been legally cast, as each voter could only cast 7 votes in that county, there being 7 delegates apportioned to San Pete county by the enabling act. This makes an apparent discrepancy of 2 votes on an average for each candidate, but in this precinct the poll list shows that 507 men voted, which would have permitted an aggregate legal vote of 3,549 if each man had voted a full ticket, or an average vote of 507 votes for the opposing candidates for each office of delegate for the constitutional convention. The plaintiff's majority, as appeared by the face of the returns, was 30 votes over his next competitor; so that, if it be conceded that there is an irregularity and discrepancy in the return from Mt. Pleasant of two votes, still it would not affect his election.

But it is claimed that the difference between the voted registry list and the poll list are irregularities that authorize a recount of the ballots by the canvassing board. We cannot agree to this. The statute, after pointing out what shall constitute the returns, and that on their receipt by the canvassing board they shall be opened and examined, provides: "And if no irregularity or discrepancy appear therein affecting the result of election of any candidate, they shall accept said returns as correct; but if the right of any person voted for, for any office, is in any way affected, then [the canvassing board] shall open the bal-

lots from said precinct and canvass the same, so far as to
determine the rights of the person whose office may be
affected." See section 256, p. 324; 1 Comp. Laws Utah.
It will be seen that the irregularity and discrepancy must
appear upon the face of the returns; in the language of
the statute, "it must appear therein." It must be such
as to affect the election of the candidate, and it is appar-
ent, also, that it must be one which may be corrected or
reconciled by a recount of the ballots; otherwise a recount
can do no good. Now, let us see what irregularities or
discrepancies would fulfill these manifest requirements, and
whether the difference between the voted registry lists and
the poll list are of such character. The tally sheets,
according to the statute, are to be made in duplicate, and
are a tabulation of the face of the ballots. Manifestly,
therefore, if there appear to be more ballots counted than
were cast as shown by the voted registry list and poll list,
this is an irregularity indicating that the judges have
made a mistake in the count, or that they have suffered
ballots illegally to be put into the boxes and counted. A
recount of the ballots will at once disclose which it is,
and permit its instant correction. But it may be asked,
if the tally sheets show a less number than the poll list
and voted registry list, why is not this an irregularity?
The answer is plain. The voter may not vote a full ticket.
Some names may be scratched, and no others inserted.
This would be perfectly legal. The presumption is that
the judges of election have done their duty. Therefore,
when they make a return which is legally consistent with
itself, no irregularity is then apparent therein; and, where
the tabulation of the ballots shows a number of votes
counted no greater than was cast, then the return is
legally consistent. The statute requires the tally sheets,
as we have before stated, to be made and returned in
duplicate. If they agree with each other, there is no dis-

crepancy; if they disagree, then a recount of the ballots will show which, if either, is right.    This discrepancy, therefore, is one pointed out by the statute that authorizes a recount of the ballots.    We have seen that the return from San Pete county at the late election in every instance shows either an equal or less number of votes counted than were cast, except at Mt. Pleasant, where there is a disagreement of two votes between the voted registry list and the tally sheets, and there is no discrepancy apparent in the duplicate tally sheets at all.    The differences between the voted registry list and the poll list could in no wise be reconciled or explained by a recount of the ballots, and it is not pretended that they could.    We are therefore of the opinion that there were no irregularities or discrepancies appearing upon the face of the returns affecting the plaintiff's election, and that the court below properly so found.

The next question is whether the court erred in admitting evidence in support of the alternative writ of *mandamus.* The contention of appellants is that inasmuch as the defendant canvassing board must, in the first instance, decide whether there are irregularities, their decision is not subject to review by *mandamus*; and it is not denied that this proceeding, in its nature, does attempt to revise their decision in this matter.    I do not know if the other members of the court agree with me in this statement, but I am of the opinion that the powers of the canvassing board under section 256, above cited, are purely ministerial.    The last clause of that section (not embraced in the citation) is not involved here, but I may say, in passing, that I think it wholly nugatory, as it does not empower the board to render any decision or take any action on the proof which it may receive.    Every canvassing board must decide, in the first instance, what are the returns of the election, but

it has never been held that this was the exercise of judicial power. It must determine that fact from the face of the returns themselves, and cannot go further; and it may not capriciously reject returns for some imaginary or real informality, which does not destroy the character of the returns as such. In the case of *State* v. *Steers*, 44 Mo. 223, it was expressly decided that *mandamus* would lie to compel a canvassing board to accept and canvass a return from the precinct which they had undertaken to reject. It was held that their powers were purely ministerial, and subject to control by *mandamus*, even in respect to deciding what were the returns of an election. See, also, McCrary, Elect. (3d Ed.) §§ 226, 227.

I have attempted to show that the determination as to whether there were irregularities or discrepancies was to be made from the face of the returns alone, and involved nothing more than the simplest kind of a problem in arithmetic; and, if found to exist, the resulting duty was to recount the votes in the boxes,—another purely ministerial act. To hold that either or all of these duties are judicial I cannot. As well might we say that the action of the county clerk in casting up the taxes on a tax roll, or that of a commissioner of schools in apportioning school money among the several districts of the territory is judicial. The truth is that the statute declares what the decision must be when the mathematical calculation is completed. There is no room left for discretion or judgment; there is no power or right to decide in but one way, and that is according to the result of the mathematical problem, which must in its nature be exact. If I know the distinction between ministerial and judicial duties, the powers of the canvassing board in this territory belong wholly to the former class, and it is not the duty of the court, as I conceive it, to in any wise extend the powers of such boards.

There is much in the record in this case and in the kin-dred case in prohibition which was heard with it in this court (39 Pac. 502) to indicate corrupt and criminal prac-tices intended to affect the election occurring between the election and the canvass by defendants. In fact, in the prohibition case the court expressly found there had been corrupt and criminal forgeries; and it is not denied that such did exist upon the tally sheets and returns made. And while, in my view, this evidence could have no proper place in either of these cases, inasmuch as the canvassing board had no power to hear evidence in regard to it, and while it is not hinted on either side that the defendants are in any wise responsible for these practices, yet it only too clearly demonstrated the danger to fair elections that would result from the exercise of such power as is claimed by an irresponsible returning board. The performances of boards of this character assuming judicial functions in Louisiana and other Southern states in 1876 are matters of recent history in this country, and known to us all. They became so corrupt and outrageous as to bring the nation to the verge of civil war, and, with this historical example before us, it seems to me that we should be slow to enlarge the powers of such a body in this territory in the direction claimed. I am therefore of the opinion that the court properly permitted the evidence offered by the plaintiff.

The last question is, did the court properly render judgment awarding the peremptory writ? This brings us to the consideration of the powers and duties of the de-fendant board. The board is organized by the ninth sec-tion of what is known as the "Edmunds Act." The third clause of that section provides: "The canvass and return of all the votes at elections in said territory for members of the legislative assembly thereof shall also be returned to said board [meaning the defendants] which shall canvass all such returns and issue certificates of elec-

tion to the persons who being eligible for such election, shall appear to have been lawfully elected." It is admitted that this legislation of Congress, creating the Utah Commission, and authorizing it to appoint registration and election officers, did not repeal any part of the election laws of the territory of Utah, except that part which provided the agencies by which such laws were to be executed. There is no contention between counsel upon this point. By the enabling act, delegates to the constitutional convention are to be elected and the votes therefor to be canvassed in the same manner provided by law for canvass and certification of the election of the members of the legislative assembly. The whole controversy turns upon the proposition as to what part of the duties and powers conferred by the territorial election law passed directly to the defendants, and what part passed to their appointees, provided for in the second clause of the ninth section of the Edmunds Law. Formerly the county clerk and some members of the county court received the returns of election both for the legislature, the county, and precinct officers and territorial officers direct from the judges of election; and the duties prescribed in section 256, above cited, of the election law, were the duties and powers conferred upon the clerk and members of the county court as a canvassing board. It is claimed by one of the counsel for the respondent that these duties are still to be performed by some board appointed in the county, or rather by some proper person, to use the language of the act of congress, appointed in the county; while one of the counsel for the respondent and both counsel for the appellants contend that the judges of election are to return the canvass of votes for members of the legislature, and therefore the canvass of votes for candidates for delegate to the constitutional convention, directly to the defendant board. We agree to this latter opinion.

It seems to us the only construction of the statute which will make all its parts consistent, and which is the construction which was placed upon the statute by those charged with its execution immediately after it was enacted, 12 years ago. If it were a case of doubt, this contemporaneous construction should have great weight with the court in determining the meaning of the statute. However, its meaning appears plain to us that the return of votes means the return by the first agency who are making the return, to wit, the judges of election, after they themselves have canvassed the ballots cast. The language is: "The canvass and return of all the votes at the time of the election shall be returned to said board." We think this means that the judges of election shall canvass the votes, and make their return in the manner provided by law, direct to the Utah Commission, and that they shall thereupon proceed to canvass any such election in the same manner that the county court was formerly required to do; that they possess the same power that the county clerk and members of the county court formerly possessed, and no more. The statute clearly provides that the defendant board shall issue to members of the legislature, and therefore, by the enabling act, to delegates to the constitutional convention, certificates of election to the persons who appear to have been lawfully elected. As we have already seen, the returns show that the plaintiff appears to have been lawfully elected.

Our conclusion, therefore, is that the court properly found there were no irregularities or discrepancies affecting the election of the plaintiff appearing upon the face of the returns; that the court properly awarded the peremptory writ against the defendants, commanding them to certify to the plaintiff's election.

We are asked to set aside the judgment for costs in this case, because the defendants are public officers acting in

good faith. If the judgment against defendants is right,— and we have seen that it is,—then we cannot disturb the judgment for costs. Section 3684 of the Compiled Laws. provides: "Costs are allowed of course to the plaintiff upon a judgment in his favor in the following cases: * * * Fourth. In a special proceeding." This is a special proceeding. See Code Civ. Proc. pt. 3, tit. 1, §§ 3716–3749.

For the reasons stated, the judgment of the court below is affirmed, with costs.

MERRITT, C. J., and KING, J., concur in the judgment. in this case.