HARRINGTON v. SECRETARY OF STATE.

ELECTIONS—PRIMARY LAW—CONSTITUTIONAL LAW—CANDIDATES—
OATH.

> Section 30a, Act No. 400, Pub. Acts 1919, amending the primary election law by requiring that before the name of any candidate for any office shall be printed on the primary election ballot such candidate shall file an affidavit with the proper official stating that he is a member of a certain political party, and that he will support the principles of that party if nominated and elected, violates section 2, Art. 16, of the State Constitution which prescribes an official oath and provides that "no other oath, declaration, or test shall be required as a qualification for any office or public trust."

Mandamus by William A. Harrington to compel Coleman C. Vaughan, secretary of State, to certify the candidacy of plaintiff for a public office.  Submitted August 7, 1920.  (Calendar No. 29,346.)  Writ granted August 12, 1920.

*Alex. J. Groesbeck,* Attorney General, *Samuel D. Pepper,* Assistant Attorney General, and *William A. Harrington,* for plaintiff.

*Oliver Spaulding,* for defendant.

PER CURIAM.  An amendment to the primary election law, section 30a, enacted in 1919 (Act No. 400), reads as follows:

"The name of no candidate for any office shall be printed on any primary election ballot, unless there shall be filed with the official with whom such petition is filed, an affidavit properly executed by such candidate, stating that he is a member of a certain political party, naming it, and that he will support the principles of that political party of which he is a member,

if nominated and elected; that he is not, and will not become a candidate for the same or any other office on any other party ticket at said primary election. His name shall be printed only on the party ballot of which he is a member as shown by his affidavit."

Plaintiff has filed with defendant a petition as a democratic candidate for circuit judge of the 34th judicial circuit. It complies with the other provisions of the statute, but he declines to attach thereto the affidavit required by the above amendment. Defendant has refused to certify his candidacy without such affidavit and mandamus is sought to compel him to do so. The necessity for an immediate decision prompts us to state the conclusion we have reached without extended discussion.

The attorney general had given an opinion that this amendment was invalid, and has filed a brief supporting such opinion. The brief filed on behalf of the defendant by an attorney connected with his office force very ably presents the claim that such legislation was within the legislative power, it being an attempt on the part of the legislature to preserve the purity of elections and guard against abuses of the elective franchise.

Section 2 of article 16 of our present Constitution prescribes an official oath which shall be taken and subscribed by all officers except those specially exempted therefrom. The concluding sentence of the section reads:

"No other oath, declaration or test shall be required as a qualification for any office or public trust."

This provision appeared in our former Constitution as section 1 of article 18.

The attorney general in his brief makes the following point which we think has great force:

"The form prescribed in section 30a constitutes both a declaration and a test for office, since it looks beyond

the mere nomination and covers the entire term of office to be held after election. The words 'if nominated and elected' occurring in the body of section 30*a*, and again in the form of oath prescribed therein can have no other meaning or effect than that such oath should be deemed binding upon the candidate after his election to office and so long as he remains in such office. Thus a candidate, after election, will be bound by an oath and test other than his constitutional oath of office. On this phase of the matter we think the decision of this court in *Dapper* v. *Smith,* 138 Mich. page 104, is absolutely controlling."

Where is the logic of saying that when elected the officer cannot be subjected to any test oath other than the constitutional oath of office, but before he can be a candidate he must subject himself to a different test oath or he cannot be a candidate, and is therefore in practical effect barred from holding the office?

It may be well to inquire in what way it will be practicable for a judicial officer to discharge the duties of his office according to the principles of the political party with which he is affiliated. Is it not one's duty as a judicial officer when litigation is before him to know no political party but to conduct the litigation without taking into consideration partisan politics?

There are other considerations that should have weight. It is within the recollection of older men when the office sometimes sought the man instead of the man seeking the office. It often occurred that as a result most capable men were available as candidates and made most excellent officers. If the present provision of the law is to be given effect no one who is not a partisan candidate has any possibility of being elected even to a judicial office. The language used in *Dapper* v. *Smith, supra,* is exceedingly germane here, and we quote some of it:

"This provision is not one designed for the benefit of the aspirant for public station alone; it is in the

interest of the electorate as well. The provision of this law which requires that, before the name of any candidate shall be placed upon the ballot at the primary election, such candidate shall on oath declare his purpose to become such, excludes the right of the electorate of the party to vote for the nomination of any man who is not sufficiently anxious to fill public station to make such a declaration. The man who may be willing to consent to serve his State or his community in answer to the call of duty when chosen by his fellow citizens to do so is excluded, and the electorate has no opportunity to cast their votes for him. It is not an answer to this reasoning to say that the electors may still vote for such a man by using 'pasters.' We cannot ignore the fact that parties have become an important and well recognized factor in government. Certain it is that this law fully recognizes the potency of parties, and provides for party action as a step toward the choice of an officer at the election. The authority of the legislature to enact laws for the purpose of securing purity in elections does not include the right to impose any conditions which will destroy or seriously impede the enjoyment of the elective franchise. *Attorney General* v. *Detroit Common Council,* 58 Mich. 213 (55 Am. Rep. 675).

"We cannot escape the conclusion that the provision in question does most seriously impede the electors in the choice of candidates for office, and that it is in conflict with the provisions of section 1 of article 18 of the Constitution."

In the brief filed on behalf of defendant it is said *Dapper* v. *Smith, supra,* should be overruled and that it was in effect overruled by *Brown* v. *Kent County Election Com'rs,* 174 Mich. 477. It may be noticed that the opinion in that case was signed by but four justices, while two of them dissented, and two, who are at present members of this court, did not sit in the case. The result reached in *Dapper* v. *Smith, supra,* was also reached in *State, ex rel. McCue,* v. *Blaisdell,* 18 N. Dak. 55 (118 N. W. 141, 24 L. R. A. [N. S.] 465); *McCamont* v. *Olcott,* 80 Or. 246 (156 Pac. 1034, L. R. A. 1916 E, 706, and note).

We feel constrained to follow the holding in *Dapper* v. *Smith*, and conclude that the amendment contravenes the constitutional provision above quoted.

It follows that the writ must issue as prayed. As the defendant in his refusal was but following the plain direction of the statute, no costs will be allowed.

Sharpe, J., did not sit.