KEIGLEY et al. v. BENCH, City Recorder

No. 5838.   Decided December 30, 1936.   (63 P. [2d] 262.)

*Geo. W. Worthen,* of Provo, for plaintiffs.

*Brockbank & Pope,* of Provo, for defendant.

ELIAS HANSEN, Chief Justice.

Plaintiffs, sponsors of the referendum petition, seek a writ of mandamus in this court directing I. G. Bench, the city recorder of Provo City, Utah, to receive and file a petition for a referendum as provided by R. S. Utah 1933, title 25, chap. 10 (25-10-1 et seq.) Application for the writ was made to this court pursuant to section 16 of that act (25-10-16). Upon the filing of plaintiffs' verified petition, an alternative writ of mandamus was issued directing the defendant to accept and file a petition for a referendum or show cause why he had not done so. Defendant appeared, filed a general demurrer and an answer to the petition. Thereafter the parties executed and filed a written stipulation setting forth the facts deemed material to this controversy. A summary of the facts so stipulated are: On May 22, 1936, the board of commissioners of Provo City, Utah, passed a resolution accepting an offer theretofore made by Nuveen & Co., bond brokers of Chicago, Ill., to purchase $800,000 of revenue bonds of Provo City. The offer so accepted, so it is recited in the resolution, is as follows:

"We will pay par and accrued interest to date of delivery to us, for Eight Hundred Thousand Dollars ($800,000.00) par value, of four and

One-half per cent (4½) Bonds, proposed to be issued by the City of Provo, Utah, for the purpose of acquiring or constructing an Electric Lighting and Power System for said City, said bonds to mature serially in from three to twenty-five years after their date, the interest to be payable semi-annually at the office of the Treasurer of the City of Provo or at some bank in the City of New York.

"The said bonds are to be self-liquidating or revenue bonds, and are to be paid exclusively out of and secured solely by the net revenues or income derived from the operation of the said Electric System.

"It is understood and agreed that you will take the necessary steps and pass the necessary ordinances required to render these bonds legal to the satisfaction of our Attorney.

"It is further understood and agreed that in case you find that it is to the best interest of the City of Provo to purchase or construct a distribution system only, and to purchase electric current at wholesale prices and distribute the same to your subscribers, we agree and will permit you to reduce the above mentioned amount of bonds accordingly, and will buy the small amount on the same terms and conditions as herein set forth.

"As time is the essence of this proposal, no unnecessary delay in deciding the point as to whether you will construct the power plant or purchase and construct the distribution system only and buy current at wholesale can be permitted because the amount of the issue must be definitely known prior to the offering of any of the bonds by us.

"It is mutually agreed and understood that your acceptance of the above proposal by Resolution, will constitute a contract for the purchase and sale of the bonds above described, on the terms and conditions herein set forth."

The resolution directed the mayor of the city to execute an acceptance of the offer for and on behalf of Provo City, Utah. After the resolution was passed and pursuant thereto, the mayor did execute an acceptance of the offer as directed. On May 27, 1936, an application for petition copies for a petition for the referendum of the foregoing resolution was filed with defendant I. G. Bench, who thereafter furnished to the sponsors petition copies for the circulation of the petition for referendum. The petition copies were circulated, and a sufficient number of legal voters of Provo City, Utah, signed the same to require a referendum election. There is

no controversy as to the sufficiency of the application for petition copies or the circulation sheets. The required signatures were duly counted and checked against the official list of registered voters by the county clerk of Utah county, Utah. Within thirty days after the passage of the resolution, the petition for referendum was duly tendered to the defendant at his office and by him refused. On June 24, 1936, the petition for a writ of mandamus was filed in this court, and an alternative writ issued requiring defendant to file the petition for referendum or show cause on July 15, 1936, why he had not done so. The defendant was personally served with the writ on June 25, 1936. On July 6, 1936, the petition for referendum was again tendered defendant, and he again refused to accept or file the same. On July 13, 1936, the commissioners of Provo City, Utah, passed a resolution whereby the acceptance of the offer of Nuveen & Co. was rescinded and the resolution passed on May 22, 1936, accepting the offer of Nuveen & Co. was "repealed, rescinded and held for naught." While the parties to this litigation have agreed upon the facts thus summarized, they divide as to the law applicable thereto. Plaintiffs contend that the resolution of May 22, 1936, accepting the offer of Nuveen & Co. to purchase $800,000 of revenue bonds of the city, is a legislative act within the meaning of R. S. Utah 1933, title 25, chap. 10, and as such the electors of the city may, in a referendum election, either approve or reject the same. Defendant contends to the contrary. Defendant further contends that in any event this has become a moot case because of the resolution of July 13, 1936, repealing the resolution of May 22, 1936, and therefore this proceeding should be dismissed. Plaintiffs contend that the duty of defendant to file a petition for a referendum continues notwithstanding the former resolution was repealed by the latter. Plaintiffs also contend that they should be awarded their costs expended in this proceeding notwithstanding it be determined that this has become a moot case. Defendant contends that he, being a public officer and having acted in

good faith, should not be required to pay costs. We shall dispose of the questions presented in the order in which they are stated.

R. S. Utah 1933, 25-10-21, provides:

"Subject to the provisions of this chapter, legal voters of any city or town, in such numbers as herein required, may initiate any desired legislation and cause the same to be submitted to the law-making body, or to a vote of the people of such city or town for approval or rejection, or may require any law or ordinance passed by the law-making body of such city or town to be submitted to the voters thereof before such law or ordinance shall take effect."

R. S. Utah 1933, 25-10-24, provides:

"Referendum petitions against any ordinance, franchise or resolution passed by the governing body of a city or town shall be filed with the clerk or recorder within thirty days after the passage of such ordinance, resolution or franchise."

It will be observed that section 21 of the act limits the applicability of a referendum to laws and ordinances passed by the lawmaking body of a city or town, while section 24 thereof indicates that it applies to an ordinance, resolution, or franchise. We, however, do not regard the apparent discrepancy as of any substantial importance. The difficulty in drawing a line of demarkation between a resolution and an ordinance is not confined to the Legislature—the courts have frequently been confronted with a similar difficulty. The authorities, however, are agreed that it is not the form but the substance of the municipal action which marks the distinction between an ordinance and a resolution. Thus it has been said that a "resolution" is such an order of the council as is ministerial or temporary in character, while an "ordinance" prescribes a permanent rule of conduct of government. 2 Dillon, Municipal Corporations (2d Ed.) § 563, p. 523. Touching the distinction as applied to legislative

referendum, the learned authority of 1 McQuillan, Municipal Corps. (2d Ed.) § 366, p. 907, has this to say:

"Both legislative and executive powers are possessed by municipal corporations. The distinction between these powers is considered important in matters involving the use of the referendum. Executive powers are often vested in the council or legislative body and exercised by motion, resolution or ordinance. Executive action evidenced by ordinance or resolution is not subject to the power of the referendum, which is restricted to legislative action as distinguished from mere administrative action. The form or name does not change the essential nature of the real step taken. The mode of effecting the action is not important. The referendum is usually held 'applicable to all ordinances and resolutions which constitute an exercise of legislative power.' 'To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. In many cases it would entirely prevent the exercise of the executive power necessary to carry out the acts determined upon by the legislative department. In the absence of a very clear declaration to the contrary, it must be presumed that the power of referendum was intended to apply solely to the legislative powers of the city.'

"While an act purely executive in character, unmixed with the exercise of legislative power, is not subject to the referendum, if the act done is essentially legislative the referendum may be invoked, irrespective of the naming of the act, whether denominated a motion, resolution or ordinance. Of course, accurately speaking, an ordinance is the proper designation for legislative action."

In 43 C. J. 585 is a similar statement of the law together with a collection of cases in support thereof. Tested by the doctrine announced by the foregoing authorities, the resolution of May 22, 1936, was a legislative action. It was calculated to bind Provo City to contract for or purchase an electric lighting and power system and to operate the same until the revenue bonds were paid. The accomplishment of that end was a matter of public policy of vital importance to the inhabitants of the city and as such is essentially legislative in character. The approval or rejection of the resolution of May 22, 1936, was a proper sub-

ject matter for referendum. The defendant was required to accept and file the resolution as a mere ministerial duty. He was not required to pass upon the validity of the resolution, and the question of its validity is not before us for review. *White* v. *Welling,* 89 Utah 935, 57 P. (2d) 703.

The right of the plaintiffs to require the referendum election ceased, however, when the resolution of May 22, 1936, was repealed and the contract with Nuveen & Co. canceled by the resolution of July 13, 1936. Nothing could be accomplished by holding a referendum election for ▮▮ the approval or disapproval of that which had no legal existence. If the end sought to be accomplished by the resolution of May 22, 1936, was to be given new life, it must be by means of initiative legislation. It could not be accomplished by referendum. The purpose which plaintiffs apparently sought by the referendum was, for the moment at least, attained when the resolution of May 22, 1936, was repealed and the contract with Nuveen & Co. rescinded. Under such a state of facts no useful purpose will now be subserved, so far as is made to appear, by requiring the defendant to accept and file the petition for a referendum. The law applicable in such case is thus stated in 5 Bancroft's Code Practice and Remedies, § 3963:

"Where the necessity for the writ of mandamus has ceased to exist, the proceeding will be dismissed. Accordingly, where the defendant shows performance subsequently to the institution of the proceeding, there is nothing further to be determined, the entire controversy becomes moot, and a dismissal will be ordered. (*State* v. *City Court,* 38 Utah 473, 113 P. 1018.) If, during a proceeding for mandamus to compel the performance of an act in accordance with the terms of a statute, the statute is repealed, the proceeding will be dismissed." *State* v. *Teton County,* 50 Mont. 434, 148 P. 314.

Plaintiffs recognize the general rule, but to escape its effect in the instant case they argue that the statute imposing the duty on defendant to file the petition for referendum has not been repealed; that plaintiffs' right and

defendant's duty are fixed by R. S. Utah 1933, 25-10-16; that it was the statute which imposed the duty upon the defendant, not the resolution of May 22, 1936. In making the distinction counsel for plaintiffs overlooked the principle upon which the doctrine is bottomed, viz., that courts will not require a useless act. Moreover, the duty of defendant to file the petition for referendum here in question does not exist solely because of the statute mentioned. On the contrary, defendant's duty in such respect came into existence by reason of the resolution. It ceased to exist when the resolution was repealed. In the absence of the resolution there was nothing to approve or reject in the referendum election sought by plaintiffs. As no practical results can now be accomplished by the issuance of the writ prayed for, the petition therefore should be denied and the action dismissed. 5 Bancroft's Code Practice and Pleading, § 3719.

Plaintiffs having thus failed to establish a present right to the writ prayed for, because it will avail them nothing we might well have refrained from considering the other question heretofore discussed in this opinion were it not for the fact that the parties are divided upon the question of who should pay the costs of this proceeding. To properly assess costs it is necessary to inquire into the merits of this controversy. Plaintiffs rely upon the case of *Fowler* v. *Gillman*, 76 Utah 414, 290 P. 358, in support of their claim that they should be awarded costs. In that case a number of authorities which bear upon the question in hand are cited and reviewed. We shall not, in this opinion, again review them. The allowance of costs is a matter of statutory regulation. R. S. Utah 1933, 104-44-2, provides that:

"Costs are allowed of course to the prevailing party in the following cases: * * *

"(4) In a special proceeding."

In the case of *Page* v. *Utah Commission*, 11 Utah 119, 39 P. 499, it was held that mandamus is a special proceeding

and costs were allowed notwithstanding the defendant was a public officer acting in good faith. That case was cited with approval in the case of *Fowler* v. *Gillman*, supra. From what has heretofore been said in this opinion, plaintiffs are entitled to prevail in their contention that it was the duty of the defendant to accept and file their petition for a referendum. Had it not been for the action of the city commissioners in repealing the resolution of May 22, 1936, plaintiffs would have been entitled to the writ prayed. It is difficult to perceive of any legal reason for relieving defendant from the payment of such costs as the plaintiffs were required to expend up to the time the resolution of May 22, 1936, was repealed. The action of the city commissioners could not deprive plaintiffs of their right to costs. The record before us shows that plaintiffs extended $10 for filing their petition for the writ of mandamus and $4.30 for mileage and fees in serving the writ upon the defendant. Plaintiffs are entitled to be reimbursed for the money so expended in the total sum of $14.30. A different question is presented as to the costs thereafter incurred. Touching the controversy that developed after defendant filed his answer in which it was alleged that the resolution of May 22, 1936, was repealed, each party prevailed in part and in part failed. Plaintiffs prevailed in their contention that the resolution of May 22, 1936, was such a municipal action as entitled them to a referendum election. They have failed in their contention that the proceeding should not be dismissed by reason of the repeal of the resolution and the rescission of the contract with Nuveen & Co. We have concluded that under such a state of facts this court should apportion the costs as provided by R. S. Utah 1933, 104-44-4. In our opinion the proper apportionment is that plaintiffs pay one half of the total costs of printing the abstract and the two briefs, and the other half should be paid by the defendant. Plaintiffs' printed abstract and brief consists of 34 pages, the defendant's brief of 12 pages. Thus plaintiffs are entitled to be reimbursed for 11

pages of their printed abstract and brief which at $1.25 (See rule 13 of this court) per page amounts to the sum of $13.75.

From what has been said it follows that the application for a writ of mandamus should be denied and the petition dismissed. Such is the order. Plaintiffs are awarded costs against defendant in the sum of $28.05.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.