**Bernadette DILLARD and Agnes B. Palmer,
Petitioners,**

v.

**Joseph P. YELDELL et al., Respondents.**

No. 8846.

District of Columbia Court of Appeals.

March 17, 1975.

Edward E. Schwab and Margaret Stone, Washington, D. C., for petitioners.

C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, Richard W. Barton and E. Calvin Golumbic, Asst. Corp. Counsels, Washington, D. C., for respondents.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges, in chambers.

NEBEKER, Associate Judge:

This motion presents the question whether a $25 filing fee can be assessed against officers of the District of Columbia Department of Human Resources (DHR) in their official capacity. A petition for a writ in the nature of mandamus to compel required agency action was dismissed as moot because the officers tardily performed the actions requested after the petition was filed. Costs are awarded to petitioners.

Petitioners are claimants before DHR. Each petitioner was granted a favorable

decision under the procedures set out by the District of Columbia City Council in Order of the Commissioner No. 68–641, September 27, 1968, governing final hearings requested by public assistance applicants and recipients. On August 6, 1974, petitioner Dillard was granted one month's retroactive payment under the Aid to Families with Dependent Children program. On June 10, 1974, petitioner Palmer was granted a full year's retroactive payment in the amount of $2,400. Neither petitioner received payment although Order of the Commissioner No. 68–641, § 11(c), requires any final decision arising out of these hearings to be "put in effect immediately unless otherwise specifically indicated in the action."

The petition for a writ of mandamus was filed September 23, 1974, and at that time petitioner Dillard had been waiting over one month and petitioner Palmer over three months for implementation of the decision. These delays are especially inappropriate in light of the purpose of the welfare legislation and regulations involved. The programs DHR administers are primarily designed to give relief to persons in need by providing some immediate purchasing power to them. The regulations recognize that, especially in cases such as these where an applicant is wrongfully denied aid, as soon as the error is discovered the aid must be made available immediately. The effectiveness of the programs depends upon the conscientious adherence to these regulations, and the availability of a writ in the nature of mandamus to compel a public officer to follow regulations governing the administrative agency has been recognized.[1]

■ The day after the petition was filed, payment was mailed to petitioner Dillard. On October 2, 1974, steps were taken to assure payment to petitioner Palmer by October 16, 1974. Therefore, on October 11, 1974, petitioners filed a suggestion of mootness because the action required had been taken. Petitioners requested that they be awarded costs in the amount of $25 to cover the filing fee for the petition in this court.

The jurisdiction of this court in the present case is based on D.C.Code 1973, §§ 1–1510 and 11–722, which sections give this court the power to review the orders and decisions of administrative agencies such as the Department of Human Resources. Specifically, D.C.Code 1973, § 1–1510(2), provides that this court can "compel agency action unlawfully withheld or unreasonably delayed". In addition, under the All Writs statute, 28 U.S.C. § 1651 (1966), this court can issue all writs "necessary or appropriate" in aid of its jurisdiction. Thus there is ample statutory authority conferring on this court responsibility to ensure compliance under this program. There is, however, no explicit statutory authority or direction for the award of costs in such a proceeding.

At common law no costs were allowed to the successful litigant in a mandamus proceeding, and it has been held that the award of costs in such a proceeding is purely statutory.[2] Some state jurisdictions have refused to award any costs in a mandamus proceeding without specific statutory authorization.[3] Other jurisdictions have relied on a general statute which awarded costs to the "prevailing party"[4] or assessed costs against the "failing party",[5] and some courts have cited no au-

1. O'Shea v. Blatchford, 346 F.Supp. 742 (S.D.N.Y.1972).

2. State v. Bartholomew, 150 A. 308 (Conn. 1930); 52 Am.Jur.2d Mandamus § 499 (1970); 55 C.J.S. Mandamus § 375 (1948).

3 State v. Bartholomew, *supra* note 2.

4. Fowler v. Gillman, 76 Utah 414, 290 P. 358 (1930).

5. Bragassa v. Bragassa, 197 Ga. 140, 28 S.E. 2d 133 (1943); Board of Educ. v. Fowler, 192 Ga. 35, 14 S.E.2d 478 (1941).

thority at all for awarding costs to successful litigants in mandamus proceedings.[6]

■ There is no general statute authorizing the award of costs in this court, rather the matter of costs is governed by D.C.App.R. 39. Neither this rule nor D.C.App.R. 21 on mandamus specifically provides for costs in mandamus proceedings. Both these rules are derived from the corresponding Federal Rules of Appellate Procedure, but the federal rules also are devoid of specific directions as to the allocation of costs in mandamus proceedings. The Notes of the Advisory Committee for Fed.R.App.P. 39 refer to 28 U.S.C. § 1920 (1966) as the statutory authorization for assessing costs. This provision states in pertinent part:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> \* \* \* \* \* \*
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

While this court is not a "court of the United States" as defined in 28 U.S.C. § 451 (1968), it would seem that our authority for permitting costs to be included in the judgment or decree of this court stems from § 1920 as necessarily incorporated in D.C.Code 1973, § 11–743. By that latter provision, a part of the District of Columbia Court Reorganization Act of 1970, 84 Stat. 475, the Congress prescribed that the business of this court shall be conducted according to the Federal Rules of Appellate Procedure. The court may adopt or prescribe modifications of those rules, but it has not done so respecting Rule 39. Accordingly, we read D.C.Code 1973, § 11–743 and 28 U.S.C. § 1920 together as providing authority for allowing costs. *See also* District of Columbia v. D. E. P., D.C. App., 311 A.2d 831 (1973); Wright v. Mathias, D.C.Mun.App., 128 A.2d 658 (1957); Simcic v. United States, D.C.Mun.App., 86 A.2d 98, aff'd, 91 U.S.App.D.C. 102, 198 F.2d 951 (1952).

■ Having reached this general conclusion as to cost authority, we are left with the question whether it applies to extraordinary proceedings. Both our Rule 39 and Federal Rule of Appellate Procedure 39 speak of awarding costs on appeal.

The "federal courts" have not always relied on explicit statutory authority for assessing costs. Early cases[7] cited "section 983 of the Revised Statutes" as authority for awarding costs to the "prevailing party", but at least one court,[8] while recognizing this practice as "the general rule", expressed doubt as to whether any act of Congress, including section 983, specifically so provided. This same court explained:

> The fragmentary character of the provisions of the acts of Congress upon this subject is due to the fact that they were framed in recognition of an almost universal usage in courts of justice of allowing costs to the prevailing party, rather than to any supposed necessity for affirmative legislation. [Western Coal & Mining Co. v. Petty, 132 F. 603, 604 (8th Cir. 1904).]

The Supreme Court in In re Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920), stated at 316, 40 S.Ct. at 548:

> The allowance of costs in the federal courts rests, not upon express statutory enactment by Congress, but upon usage

---

6. Whorton v. Gaspard, 239 Ark. 715, 393 S.W.2d 773 (1965); State v. Common Council of City of Racine, 201 Wis. 435, 230 N.W. 70 (1930).

7. In re Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920); United States v. Schurz, 102 U.S. 407, 26 L.Ed. 219 (1881); In re Haight & Freese Co., 164 F. 688 (1st Cir. 1908).

8. Western Coal & Mining Co. v. Petty, 132 F. 603 (8th Cir. 1904).

long continued and confirmed by implication from provisions in many statutes.
. . .

This jurisdiction has also recognized that "[t]he assessment of costs is, in part, a matter governed by statute; in part, by usage." Adlung v. Gotthardt, 103 U.S. App.D.C. 195, 196, 257 F.2d 199, 200 (1958).

Looking to the early cases for the established "usage", we find:

> In the case of Kendall v. United States, 37 U.S. 524, 12 Pet. 524, 9 L.Ed. 1181, which is the leading case establishing the right of a citizen to the use of the writ of *mandamus* to compel a public officer to perform a duty merely ministerial, the realtor recovered his costs. . . . [United States v. Schurz, 102 U.S. 407, 408, 26 L.Ed. 219 (1881).]

The facts of the present case are somewhat analogous to In re Haight & Freese Co., 164 F. 688 (1st Cir. 1908), in which a petition for a writ of mandamus to compel a judge to grant an appeal was dismissed after the court had issued a show cause order against the judge because, after the filing of the petition, the judge had granted the appeal. In discussing the award of costs under these circumstances, the court said:

> There is, however, no statute nor any rule of the Supreme Court which, by its terms, gives costs to a prevailing party on a mere order to show cause issued on a petition for a writ of mandamus, or on any other petition. Therefore the question of costs on such a petition is governed by the same principles which apply to bills in equity, and to various applications laying the foundation of formal proceedings. [*Id.* at 689–90.]

Accordingly, we hold that this court has authority to award costs in this mandamus proceeding.

■ We now turn to the question of whether under the facts of this case an award of costs is warranted. Mandamus is a legal remedy whose grant or denial is largely controlled by equitable principles,[9] and it therefore is appropriate to use equitable principles in awarding costs in such a proceeding. The facts of the present case are unique, but other courts faced with similar situations have held that when the party against whom a writ of mandamus is sought performs the requested action, thereby making the controversy moot, the petitioner can recover costs.[10] Applying equitable principles to the facts of this case, we hold that petitioners should be awarded costs in the amount of $25 to cover the filing fee for the petition. There may be circumstances under which no costs would be recoverable, but the length of the delay in the present case, in light of the purpose of the regulations violated, justifies an award of costs to petitioners.

Respondents, however, are officers of an agency of the District of Columbia government and they argue that they are therefore exempted from paying costs under D. C.Code 1973, § 15–705(a), which states:

> The District of Columbia or any officer thereof acting therefor may not be require to pay court costs or fees in any court in and for the District of Columbia.

This statute comes without substantial change from an earlier statute, D.C.Code 1901, ch. 854 § 177, 31 Stat. 1219. Tracing the changes in the statute and searching the legislative history available to explain any changes, we are unable to discern any significant difference in the purpose of

---

9. Duncan Townsite Co. v. Lane, 245 U.S. 308, 38 S.Ct. 99, 62 L.Ed. 309 (1917).

10. Bollotin v. Workmen Service Co., 128 Cal.App.2d 339, 275 P.2d 599 (1954); Bragassa v. Bragassa, *supra* note 5; Board

of Educ. v. Fowler, *supra* note 5; Linden v. Board of Park Comm'rs, 178 Kan. 333, 285 P.2d 1070 (1955); State v. Groff, 109 Ohio App. 221, 164 N.E.2d 761 (1959); Keigley v. Bench, 90 Utah 569, 63 P.2d 262 (1930).

the statute in 1901 and the purpose of the statute as amended in 1961.[11]

The opinion in Brown v. MacFarland, 22 App.D.C. 412 (1903), interpreted the precursor statute to apply only to costs or fees paid by the government directly to the court, and not to the reimbursement of a party for costs incurred by that party. The court then observed, and we agree, that

there is nothing in these statutes that exempts the District of Columbia, or its commissioners as such, from liability for costs in suits instituted by individuals against them. The defendant or defendants in such cases are not clothed with any rights of sovereignty. They stand precisely as other litigants do, except that judgments against them may not perhaps, under present conditions, be enforced by execution, and successful plaintiffs in such suits are as much entitled to be reimbursed for their costs incurred in the maintenance of their lawful rights as though the defendants were merely private individuals. There is no ground in reason or in the law for the allowance of immunity from costs in such cases. [*Id.* at 416–17.]

Some state jurisdictions have refused to assess costs against the government without explicit statutory authority.[12] At least one court has found the state liable for costs unless specifically exempted by statute,[13] while others have simply assessed[14] or refused to assess[15] costs against the state with no explanation or cited authority. Many state courts have implied authority to assess costs against the government from general statutes allowing the award of costs[16] or from a statute such as D.C.Code 1973, § 1–102, which enables the government entity to sue and be sued.[17] In Reconstruction Finance Corp. v. J. G. Menihan Corp., 312 U.S. 81, 84, 61 S.Ct. 485, 85 L.Ed. 595 (1941), the Supreme Court stated that waivers by Congress of governmental immunity from suit should be "liberally construed".

We apply the principle that there is no presumption that the [government] agent

---

11. Both the Senate and House reports on the 1961 amendment of the 1901 statute state: The District of Columbia government is required to conduct a large volume of business in the courts. Consequently, the requirement that the District pay court fees merely operates to translate money made available by Congress for certain purposes to moneys credited to the District of Columbia without adding to the District's revenues.

The commissioners of the District of Columbia have advised the committee that the conduct of the District's business in the courts would be greatly facilitated by the enactment of the bill and would relieve the District of an unnecessary bookkeeping operation.

S.Rep.No. 1511, 86 Cong., 2d Sess. 2 (1960), and H.R.Rep.No.1204, 87th Cong., 1st Sess. 2 (1961).

12. Fidalgo Island Packing Co. v. Phillips, 16 Alaska 621, 147 F.Supp. 883 (1957); Gulf Shipside Storage Corp. v. Thames, 217 La. 128, 46 So.2d 62 (1950); Richmond v. Pennsylvania Higher Educ. Assistance Agency, 6 Pa.Cmwlth. 612, 297 A.2d 544 (1972); State v. Coffin, 52 Wash.2d 894, 327 P.2d 741 (1958) (en banc); Annot., 72 A.L.R.2d 1399 (1960).

13. Atlantic Richfield Co. v. Warren Independent School Dist., 453 S.W.2d 190 (Tex. Civ.App.1970).

14. Whorton v. Gaspard, *supra* note 6; Linden v. Board of Park Comm'rs, *supra* note 10; Miller v. Michigan Bd. of Registration, 336 Mich. 35, 57 N.W.2d 320 (1953); State v. Mayor & Aldermen of Town of Fayetteville, 196 Tenn. 407, 268 S.W.2d 330 (1954); State v. Common Council of City of Racine, *supra* note 6.

15. Tedesco v. Civil Service Comm'n of New Jersey, 137 N.J.L. 434, 60 A.2d 67 (1948); Gardner v. Bailey, 128 W.Va. 331, 36 S.E. 2d 215 (1945).

16. Board of Pub. Instruction v. Feller, 234 So.2d 356 (Fla.Sup.Ct.1970); Simpson v. Merrill, 234 So.2d 350 (Fla.Supt.Ct.1970); Fowler v. Gillman, *supra* note 4.

17. Reconstruction Fin. Corp. v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595 (1941); Barr v. Game, Fish & Parks Comm'n, 30 Colo.App. 482, 497 P.2d 340 (1972); State v. Brackman, 260 S.W. 2d 800 (Mo.App.1953).

is clothed with sovereign immunity. . . . We apply the farther principle that the words "sue and be sued" normally include the natural and appropriate incidents of legal proceedings. The payment of costs by the unsuccessful litigant, awarded by the court in the proper exercise of the authority it possesses in similar cases, is manifestly such an incident. . . . [*Id.* at 85, 61 S.Ct. at 487.]

The United States government is no longer immune from assessment for costs under 28 U.S.C. § 2412 (1969), and state courts have generally held that when the state voluntarily enters the court as a litigant, either as plaintiff or defendant, it places itself on equal grounds with other parties before the court and costs may be assessed against it just as against other parties.[18]

Jurisdictions faced with a statute such as D.C.Code 1973, § 15–705(a), explicitly exempting the government and officers thereof from costs, have had varying interpretations of the provisions. In attempting to discern the legislative purpose and intent of such a provision, some jurisdictions have limited the exemption to certain costs in specific circumstances.[19] Louisiana has consistently held that a similar statutory exemption did not apply to legal costs in expropriation proceedings in which the state had not tendered true value for the land prior to suit.[20] An Arizona Court of Appeals decision recently followed the holding of an earlier Arizona Supreme Court case that such an exemption could apply only to costs paid by the government directly to the court and not to costs incurred by successful litigants against the government or it officials.[21]

Such an interpretation seems particularly appropriate on the facts of this case since the costs incurred by the petitioners were so clearly the result of the respondents' non-actions. Commenting upon the immunity of the government from costs incurred in litigation, the Florida courts have observed, and we agree:

We are aware of decisions holding the State and its agencies immune from taxation of costs of litigation. We are also aware that governmental agencies today directly affect the lives and property of private citizens more than at any time in the past. This trend has given rise to increased litigation as individuals contest the demands of government. When,

18. Breithaupt v. State, 332 S.W.2d 452 (Tex. Civ.App.1960); Reed v. State, 78 S.W.2d 254 (Tex.Civ.App.1935); Annot., 72 A.L.R.2d 1392 (1960).

19. City of Phoenix v. Kenly, 21 Ariz.App. 394, 519 P.2d 1159, 1162 (1974) ("refer only to those fees actually paid to the court or to court officers and not to the recovery of taxable costs incurred by a successful litigant against such bodies and officials"); Hammons v. Waite, 30 Ariz. 392, 395, 247 P. 799, 801 (1926) ("does not apply to a recovery of the taxable court costs incurred by a successful litigant against such officials and bodies"); State Bd. of Registration for Professional Eng'rs v. Rogers, 239 Miss. 35, 121 So.2d 720 (1960) (although the statute specifically stated that no "damages, fees, or other costs" could be assessed against the Board, the court found that the Board was not exempt from "ordinary court costs" such as witness fees and costs of appeal).

20. State, Dep't of Highways v. Salemi, 249 La. 1078, 193 So.2d 252 (1966), and State,

Through Dep't of Highways v. Reimers, 249 La. 1044, 192 So.2d 558 (1966), clarifying the holding in Westwego Canal & Terminal Co. v. Louisiana Highway Comm'n, 200 La. 990, 9 So.2d 389 (1942).

21. It seems to us rather absurd to hold that the Legislature swallowed the camel of allowing a judgment against a public body or official while it strained at the gnat of costs, . . .
It appears to us that the true construction is plain. In territorial days court fees and costs of a similar nature advanced by litigants belonged to the officers who received them. Under statehood they became public moneys . . . . [Therefore, to require a state or official to pay court costs] would be simply taking money out of one pocket of the public and putting it into another, at a useless waste of time, bookkeeping, and balancing of accounts. . . . [Hammons v. Waite, *supra* note 19, 247 P. at 800–01 (this case was recently reaffirmed in City of Phoenix v. Kenly, *supra* note 19).]

through litigation, these demands are determined to be unlawful, the government, like any other party, should be compelled to pay the costs of the litigation.[22]

Although there is authority for assessing costs against respondents personally,[23] such action is usually not taken when officials act in good faith[24] or follow the plain direction of the statute.[25] Although the respondents did not follow the plain direction of the regulation, there is not shown to us the level of negligence or wrongdoing necessary to hold them personally liable.[26]

In awarding costs some jurisdictions do not specify whether the official or the governmental body is actually liable,[27] but others discuss the alternatives in depth with particular emphasis on whether funds have been allocated for that specific purpose.[28] If funds have not been specifically allocated some courts will not assess costs against the governmental body[29] or, if they do, will acknowledge that there is no way of enforcing the award.[30] Our decision is to award costs to the petitioners in the amount of $25 representing their costs in this action.

The petition for a writ of mandamus is dismissed as moot. Costs are awarded to petitioners. The Clerk will provide for such in the order of dismissal.

So ordered.

22. Simpson v. Merrill, *supra* note 16, 234 So. 2d at 351.

23. Roesch-Zeller Inc. v. Hollembeak, 5 Ill. App. 94, 124 N.E.2d 662 (1955) ; Barten v. Turkey Creek Watershed Joint Dist. No. 32, 200 Kan. 489, 438 P.2d 732 (1968) ; Ludwig v. Board of County Comm'rs of Sarpy County, 170 Neb. 600, 103 N.W.2d 838 (1960) ; Fowler v. Gillman, *supra* note 4.

24. Pipes v. Hilderbrand, 110 Cal.App.2d 645, 243 P.2d 123 (1952) ; State v. Board of Park Comm'rs, 131 W.Va. 417, 47 S.E.2d 689 (1948).

25. Harrington v. Vaughan, 211 Mich. 395, 179 N.W. 283 (1920).

26. Barten v. Turkey Creek Watershed Joint Dist. No. 32, *supra* note 23 ; Ancheta v. Daly, 77 Wash.2d 255, 461 P.2d 531 (1969) (en banc).

27. Whorton v. Gaspard, *supra* note 6 ; State v. Groff, *supra* note 10 ; Keigley v. Bench, *supra* note 10.

28. Board of Pub. Util. Comm'rs v. Plainfield-Union Water Co., 30 F.2d 859 (3d Cir.), cert. denied, 279 U.S. 858, 49 S.Ct. 353, 73 L.Ed. 999 (1929) ; Simpson v. Merrill, *supra* note 16 (concurring opinion).

29. In re Vulcan & Reiter Co., 162 F.2d 92 (2d Cir. 1947).

30. Texas Dep't of Pub. Safety v. Morris, 426 S.W.2d 290, rev'd on other grounds, 436 S.W.2d 124 (Tex.Sup.Ct.1968).