## WILSON *v.* EUREKA CITY.

### ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 142. Submitted January 17, 1899. — Decided February 20, 1899.

Section 12 of ordinance No. 10, of Eureka City, providing that "No person shall move any building or frame of any building, into or upon any of the public streets, lots or squares of the city, or cause the same to be upon; or otherwise to obstruct the free passage of the streets, without the written permission of the mayor, or president of the city council, or in their absence a councillor. A violation of this section shall on conviction, subject the offender to a fine of not to exceed twenty-five dollars," is not in conflict with the provisions of the Constitution of the United States.

SECTION 12 of ordinance number 10 of Eureka City, Utah, provided as follows:

"No person shall move any building or frame of any building, into or upon any of the public streets, lots or squares of the city, or cause the same to be upon, or otherwise to obstruct the free passage of the streets, without the written permission of the mayor, or president of the city council, or in their absence a councillor. A violation of this section shall on conviction, subject the offender to a fine of not to exceed twenty-five dollars."

The plaintiff in error was tried for a violation of the ordinance in the justice's court of the city. He was convicted and

sentenced to pay a fine of twenty-five dollars.  He appealed to the district court of the first judicial district of the Territory of Utah.

On the admission of Utah into the Union the case was transferred to the fifth district court of Juab County, and there tried on the 24th of October, 1896, by the court without a jury, by consent of the parties.

Section 12, *supra*, was offered and admitted in evidence. Plaintiff in error objected to it on the ground that it was repugnant to section 1 of article 14 of the Constitution of the United States, in that it delegated an authority to the mayor of the city, or in his absence to a councillor.

There was also introduced in evidence an ordinance establishing fire limits within the city, providing that no wooden buildings should be erected within such limits except by the permission of the committee on building, and providing further for the alteration and repair of wooden buildings already erected.  The ordinance is inserted in the margin.[1]

----

[1] SECTION 1.  That the following boundaries are hereby established as the fire limits of Eureka City, to wit: Commencing at a point on Main street of said city, where said street crosses the Union Pacific Railway track, and opposite or nearly opposite, the Keystone hoisting works, thence running in an easterly direction along said Main street to a point where said street intersects the road or street easterly of the site now occupied by the M. E. Church building; the northerly and southerly boundaries of said fire limits to be two hundred feet on each side of said Main street for said distance.

SEC. 2.  Every building hereafter within the fire limits of said city shall be of brick, stone, iron or other substantial and incombustible material, and only the following wooden buildings shall be allowed to be erected, except as hereinafter provided, viz.: Sheds to facilitate the erection of authorized buildings, coal sheds not exceeding ten feet in height, and not to exceed one hundred feet in area, and privies not to exceed thirty feet in area and ten feet in height, and all such sheds and privies shall be separate structures: *Provided*, That any person desiring to erect a building of other material than those above specified within said fire limits, shall first apply to the committee on building within said fire limits of the city for permission so to do, and if the consent of the committee on building within said fire limits shall be given, they shall issue a permit, and it shall thereupon be lawful to erect such building under such regulations and restrictions as the committee on building within said fire limits may provide.

SEC. 3.  Any wooden building already within said fire limits shall only be altered or repaired in such a manner that neither area nor height be in-

The evidence showed that the plaintiff in error was the owner of a wooden building of the dimensions of twenty by sixteen feet, which was used as a dwelling house. It was constructed prior to the enactment of the ordinances above mentioned. The evidence further showed that plaintiff in error applied to the mayor for permission to move the building along and across Main street in the city, to another place within the fire limits. The mayor refused the permission, stating that if the desire was to move it outside of the fire limits permission would be granted. Notwithstanding the refusal, the plaintiff in error moved the building, using blocks and tackle and rollers, and in doing so occupied the time between eleven A.M. and three P.M. At the place where the building stood originally the street was fifty feet from the houses on one side to those on the other — part of the space being occupied by sidewalks, and the balance by the travelled highway. The distance of removal was two hundred and six feet long and across Main street. Eureka City was and is a mining town, and had and has a population of about two thousand. It was admitted that the building was moved with reasonable diligence.

The plaintiff in error was again convicted. From the judg-

---

creased without the consent of the said committee on building within said fire limits.

SEC. 4. The said committee on building within said fire limits shall have the power to stop the construction of any building, or the making of alterations or repairs on any building where the same is being done in violation of the provisions of this ordinance, and any owner, architect or builder, or others who may be employed, who shall assist in violation of non-compliance with the provisions of this ordinance shall be subject to a fine for every such violation or non-compliance, of not less than ten nor more than one hundred dollars.

SEC. 5. That there shall be a committee consisting of three members of the council appointed by the mayor and confirmed by the council, to be known as the " committee on building within the fire limits of Eureka City," and that said committee be appointed immediately upon the taking effect of this ordinance.

SEC. 6. This ordinance shall take effect and be in force from and after its first publication in the Tintic Miner.

Passed and approved June 4, 1894.

ment of conviction he appealed to the Supreme Court of the State, which court affirmed the judgment, and to the judgment of affirmance this writ of error is directed.

Eureka City has no special charter, but was incorporated under the general incorporation act of March 8, 1888, and among the powers conferred by it on city councils are the following :

"10. To regulate the use of streets, alleys, avenues, sidewalks, crosswalks, parks and public grounds.

"11. To prevent and remove obstructions and encroachments upon the same."

The error assigned is that the ordinance is repugnant to the Fourteenth Amendment of the Constitution of the United States, because "thereby the citizen is deprived of his 'property without due process of law," and " the citizen is thereby denied the equal protection of the law."

*Mr. J. W. N. Whitecotton* for plaintiff in error.

*Mr. P. L. Williams* for defendant in error.

MR. JUSTICE MCKENNA, after stating the case, delivered the opinion of the court.

Whether the provisions of the charter enabled the council to delegate any power to the mayor is not within our competency to decide. That is necessarily a state question, and we are confined to a consideration of whether the power conferred does or does not violate the Constitution of the United States.

It is contended that it does, because the ordinance commits the rights of the plaintiff in error to the unrestrained discretion of a single individual, and thereby, it is claimed, removes them from the domain of law. To support the contention the following cases are cited : *Matter of Frazee*, 63 Michigan, 396 ; *State ex rel. Garrabad* v. *Dering*, 84 Wisconsin, 585 ; *Anderson* v. *Wellington*, 40 Kansas, 173 ; *Baltimore* v. *Radecke*, 49 Maryland, 217 ; *Chicago* v. *Trotter*, 136 Illinois, 430.

With the exception of *Baltimore* v. *Radecke*, these cases passed on the validity of city ordinances prohibiting persons parading streets with banners, musical instruments, etc., without first obtaining permission of the mayor or common council or police department. Funeral and military processions were excepted, although in some respects they were subjected to regulation. This discrimination was made the basis of the decision in *State ex rel. Garrabad* v. *Dering*, but the other cases seem to have proceeded upon the principle that the right of persons to assemble and parade was a well-established and inherent right, which could be regulated but not prohibited or made dependent upon any officer or officers, and that its regulation must be by well-defined conditions.

This view has not been entertained by other courts or has not been extended to other instances of administration. The cases were reviewed by Mr. Justice McFarland of the Supreme Court of California in *In re Flaherty*, 105 California, 558, in which an ordinance which prohibited the beating of drums on the streets of one of the towns of that State "without special permit in writing so to do first had and obtained from the president of the board of trustees," was passed on and sustained. Summarizing the cases the learned justice said:

"Statutes and ordinances have been sustained prohibiting awnings without the consent of the mayor and aldermen (*Pedrick* v. *Bailey*, 12 Gray, 161); forbidding orations, harangues, etc., in a park without the prior consent of the park commissioners (*Commonwealth* v. *Abrahams*, 156 Mass. 57), or upon the common or other grounds, except by the permission of the city government and committee (*Commonwealth* v. *Davis*, 140 Mass. 485); 'beating any drum or tambourine, or making any noise with any instrument for any purpose whatever, without written permission of the president of the village,' on any street or sidewalk (*Vance* v. *Hadfield*, 22 N. Y. 858, 1003; 4 N. Y. Supp. 112); giving the right to manufacturers and others to ring bells and blow whistles in such manner and at such hours as the board of aldermen or selectmen may in writing designate (*Sawyer* v. *Davis*, 136 Mass.

239; 49 Amer. Rep. 27); prohibiting the erecting or repairing of a wooden building without the permission of the board of aldermen (*Hine* v. *The City of New Haven*, 40 Conn. 478); authorizing harbor masters to station vessels and to assign to each its place (*Vanderbilt* v. *Adams*, 7 Cow. 349); forbidding the occupancy of a place on the street for a stand without the permission of the clerk of Faneuil Hall Market (*Nightingale, petitioner*, 11 Pick. 168); forbidding the keeping of swine without a permit in writing from the board of health (*Quincy* v. *Kennard*, 151 Mass. 563); forbidding the erection of any kind of a building without a permit from the commissioners of the town through their clerk (*Commissioners &c.* v. *Covey*, 74 Md. 262); forbidding any person from remaining within the limits of the market more than twenty minutes unless permitted so to do by the superintendent or his deputy (*Commonwealth* v. *Brooks*, 109 Mass. 355)."

In all of these cases the discretion upon which the right depended was not that of a single individual. It was not in all of the cases cited by plaintiff in error, nor was their principle based on that. It was based on the necessity of the regulation of rights by uniform and general laws — a necessity which is no better observed by a discretion in a board of aldermen or council of a city than in a mayor, and the cases, therefore, are authority against the contention of plaintiff in error. Besides, it is opposed by *Davis* v. *Massachusetts*, 167 U. S. 43.

Davis was convicted of violating an ordinance of the city of Boston by making a public address on the "Common," without obtaining a permit from the mayor. The conviction was sustained by the Supreme Judicial Court of the Commonwealth, 162 Mass. 510, and then brought here for review.

The ordinance was objected to, as that in the case at bar is objected to, because it was " in conflict with the Constitution of the United States, and the first section of the Fourteenth Amendment thereof." The ordinance was sustained.

It follows from these views that the judgment of the Supreme Court of Utah should be and it is

*Affirmed.*