STATE EX REL. STRIKE, Appellant, vs. COMMON COUNCIL OF THE CITY OF RACINE and others, Respondents.

*March 8—April 1, 1930.*

436

437

438

440

For the appellant there were briefs by *Weisman & Jorgensen* of Racine, and oral argument by *J. M. Weisman*.

*Cornelius Colbert,* city attorney of Racine, for the respondents.

OWEN, J.    Before it can be determined whether the common council abused its discretion in the matter of refusing a license to the relator, it becomes necessary first to ascertain the extent of the discretion vested by the ordinance in the common council.

The licensing of gasoline filling stations seems to be recognized as a proper exercise of the police power.   So far as the purpose sought to be accomplished by such ordinances is revealed by the reported cases, it seems to be confined to the prevention of fire hazards and the congestion of traffic,

as in *Hyma v. Seeger,* 233 Mich. 659, 207 N. W. 834; *Standard Oil Co. v. Minneapolis,* 163 Minn. 418, 204 N. W. 165; *Application of Larkin Co.* 242 N. Y. 330, 151 N. E. 637, or the enforcement of zoning ordinances, as in *Marquis v. Waterloo* (Iowa) 228 N. W. 870. We assume, without consideration, that the prevention of fraudulent practices in the operation of a gasoline station, such as are detailed in the resolution of the common council, attached to and made a part of its return, as well as its amended return to the alternative writ, furnishes a legitimate subject for the exercise of the police power. However, whether such considerations may form the basis of the discretion of the dispensing body depends upon whether it can be said that the ordinance was adopted for the purpose of preventing fraud, and that the discretion of the common council goes to the extent of inquiring into the honesty and good faith of the applicant in his business dealings with his patrons.

By sec. 2 the ordinance prohibits any person from operating a gasoline station without first having secured a license therefor. By sec. 3 it is required that the application shall specify the location of the building, structure, premises, inclosure, or other place in which it is proposed to keep such filling station, and the capacity or capacities in gallons of the container or containers, tank or tanks. It is also provided therein that the council may in its discretion secure the recommendation of the chief of the fire department to authorize the issuance of such license. Sec. 6 provides for inspections twice a year by the chief of the fire department, who shall see that the premises are maintained in compliance with the ordinance of the city, and that there is no dangerous accumulation of waste or other combustible material on the premises. Sec. 7 relates to the construction and location of the tanks. Then there are provisions that the filling station shall not be operated within 200 feet of any public theater, church, or public school, and in certain residence districts unless the property owners consent.

Now all of these provisions of the ordinance have direct reference to matters affecting the fire hazard attending the operation of such stations and to prevent their operation in close proximity to designated buildings or within residential communities. There is nothing in the ordinance relating to the character or business honesty of the applicant. There is nothing in the ordinance which authorizes the common council to take into consideration the effect of such filling stations upon the traffic or congestion of traffic. The only provision in the ordinance which seems to have any relation to the personal characteristics of the applicant for the license is sec. 8, which prohibits the transfer of the license to any other person. However, in the absence of any other provision of the ordinance vesting discretion in the common council to consider the character or business integrity of the applicant, we do not consider that this provision of the ordinance, standing alone, is sufficient for the accomplishment of that purpose. It is a proper provision to enable the city authorities to know who are operating the various filling stations in the city. The ordinance as a whole clearly reveals its purpose to be that of protecting the city from the fire hazard incident to the operation of such stations, so far as the same is dependent upon their location and the accumulation of waste. Within this field the council no doubt had broad discretion, and while acting within this field the action of the common council in denying the application would carry with it the presumption of a reasonable exercise of that discretion. *Milwaukee v. Ruplinger,* 155 Wis. 391, 145 N. W. 42; *Application of Larkin,* 242 N. Y. 330, 151 N. E. 637; *Gundling v. Chicago,* 177 U. S. 183, 20 Sup. Ct. 633; *Fischer v. St. Louis,* 194 U. S. 361, 24 Sup. Ct. 673; *Wilson v. Eureka,* 173 U. S. 32, 19 Sup. Ct. 317. The facts found by the trial court, recited in the statement of facts, probably would have justified the common council in refusing the license if it appeared that the license was refused upon such considerations,

But it is to be assumed that the erection of this filling station was permitted by the city. It is to be remembered that it had been continuously licensed in the past, and the considerations with reference to the proximity of the tanks to the sidewalk and the congestion of traffic in the street had not theretofore induced the common council to deny a license for the conduct of the filling station at that place, and in the return to the alternative writ it is not claimed that the license was denied for any such reasons. While the trial court found that the existence of these reasons was sufficient to justify the common council in denying the license, we do not know whether these reasons were deemed sufficient by the common council. We do not know how many other filling stations these very considerations would also put out of business in Racine, as any honest enforcement of the ordinance would require like treatment of like conditions. It is impossible for a court to say that the common council based its discretion upon any such considerations, or that they would have determined that a license ought not to issue because of the existence of such facts.

The return of the respondent to the alternative writ, as well as the evidence in the case, shows that the license was denied because of the personal characteristics of the applicant which were entirely foreign to the discretion which they were permitted to exercise under the terms of the ordinance. Although the presumption of regularity attaches to the exercise of discretion on the part of licensing bodies, that presumption does not persist after it appears that their discretion was influenced by a consideration of matters concerning which no discretion was lodged with the licensing body. It follows that the common council has shown no valid reason for the denial of the license, and the peremptory writ of *mandamus* should have issued.

It is urged, however, that as the licensing period has expired, a writ should not now issue. This is true, but the

appellant is entitled to the judgment of this court upon the question presented. Even though the alternative writ may not now issue, if the judgment of the trial court should have been for the issuance of the peremptory writ of *mandamus,* the appellant is entitled to a reversal of the judgment with costs, and is further entitled to recover his costs in the trial court. *State ex rel. Runge v. Anderson,* 100 Wis. 523, 76 N. W. 482; *State ex rel. Treat v. Hammel,* 134 Wis. 61, 114 N. W. 97; *State ex rel. Conlin v. Wausau,* 137 Wis. 311, 118 N. W. 810; *State ex rel. Hathaway v. Mirlach,* 174 Wis. 11, 182 N. W. 331.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment for costs in favor of the relator and appellant.