## STRINGHAM et al. v. SALT LAKE CITY.

No. 7162.   Decided January 17, 1949.   (201 P. 2d 758.)

See 44 C. J., Municipal Corporations, sec. 3807; 37 Am. Jur. 778. Validity of statute or ordinance vesting discretion in public officials without prescribing rule of action, note, 92 A. L. R. 400.

*Richards & Bird,* of Salt Lake City, for appellants.

*E. R. Christensen, Homer Holmgren* and *A. Pratt Kesler,* all of Salt Lake City, for respondent.

PRATT, Chief Justice.

This appeal is from the dismissal by the lower court of injunctive proceedings initiated by plaintiffs to prevent the Salt Lake City Commissioners from compelling them to remove their advertising signs from that part of the public streets which lies between the sidewalk and the curb. The dismissal followed the sustaining of a demurrer to the complaint. The proceedings were initiated by plaintiffs on

behalf of themselves and others similarly situated. Such facts as are involved in the case are found in the pleadings. The signs include many referring to motor courts.

Under and pursuant to Section 5720 of the Revised Ordinances of Salt Lake City, Utah, plaintiffs were granted permission to use that parking for the erection of their signs; but the City, as provided in the ordinance, reserved the right to "revoke, alter or modify" the licenses whenever the City Commissioners "deem it to be to the best interests" of the city. The ordinance authorized the city to remove as a nuisance all such structures maintained in violation of the ordinance. [quotations from the ordinance.]

On December 3, 1947, the City Commissioners published a notice that on Thursday, December 18, 1947, at 11 o'clock A. M. in Room 302, City and County Building, a public hearing would be held at the request of one J. E. Christie, and others, to amend this Section 5720 of the Ordinances, to prohibit signs of motor lodge operators upon city property. The meeting was held, and apparently the proposed amendment met with approval, as a motion was made and passed to notify Mr. Christie that the Bureau of Mechanical Inspections had been instructed to notify *all owners* of signs in such areas [the notification was not just to motor lodge owners] to remove their signs immediately. The motion also called for action to make the amended ordinance effective. Plaintiffs received the notices, but as yet the amended ordinance has not become effective. Plaintiffs filed their petition in the lower court to enjoin the enforcement of the ordinance as amended.

The amended ordinance, Section 5720, differs from the original in that such signs, sign posts, etc., as are in controversy here, are moved from the definition of "structures" to the definition of "obstructions", and the other terms of the ordinance prohibit entirely the placing, casting, depositing or permitting any "obstruction" in the street. The original ordinance authorized the licensing of the signs herein involved, as permissive "structures".

Plaintiffs (appellants) have based their arguments in favor of the injunction upon four points:

(1) No present order of the respondent requires that appellants remove their signs.

(2) Assuming that respondent made an order, then because the order was made without a finding or determination and in the absence of evidence of reason or need the order was void and cannot be deemed to be in the best interest of Salt Lake City.

(3) Assuming that no finding, determination, or consideration of evidence must precede issuance of an order of removal, then the order is still arbitrary, capricious, and void because not supported by any reason, logic, lawful classification, or legitimate objective.

(4) Section 5720, Revised Ordinances of Salt Lake City, 1944 is void because it contains no standard or rule to guide the Commissioners or the public in the matter of removal of licensed signs.

To properly consider these arguments, we should give some consideration to the statutes of our State authorizing action by the city in such matters.

Sec. 15-8-11, U. C. A. 1943:

"They may *regulate* the use of streets, alleys, avenues, sidewalks, crosswalks, parks and public grounds, *prevent and remove obstructions and encroachments thereon,* and provide for the lighting, sprinkling and cleaning of the same." (Italics added.)

Sec. 15-8-23, U. C. A. 1943:

"They may *regulate* and control the use of sidewalks and all structures thereunder or thereover; and they may require the owner or occupant, or the agent of any owner or occupant, of property to remove all weeds and noxious vegetation from such property, and in front thereof to the curb line of the street, and to keep the sidewalks in front of such property free from litter, snow, ice *and obstructions.*" (Italics added.)

Sec. 15-8-26, U. C. A. 1943:

*"They may* regulate or *prevent* the use of streets, sidewalks, public buildings and grounds for signs, signposts, awnings, horse troughs or racks, or for posting handbills or advertisements." (Italics added.)

Sec. 15-8-27, U. C. A. 1943:

"They may *regulate or prohibit the exhibition*, distribution or carrying *of placards* or handbills on the streets, public grounds or sidewalks. (Italics added.)

We invite particular attention to the words "regulate", "prohibit", and "prevent", as used in these sections. It seems clear that Section 5720 of the city ordinances and the proposed amendment thereto fall within the power granted by these Code sections. The question becomes one of whether or not it properly applies those powers.

Point (1): We cannot give much weight to this point for the reason that, although the action of the City is indicative of an intention to amend the ordinance to exclude such signs as obstructions, they could, without, or before, such amendment, pursuant to the power reserved by the ordinance to do so, revoke those licenses in the interest of the city upon the ground that the structures had become obstructions. We are not dealing with a use right that citizens have in the street for traffic purposes, but are dealing with a use thereof prohibited except by special permit of the city, which permit is, by the ordinance in question, revocable if deemed to the best interests of the city to revoke. The resolution passed sufficiently indicates that the licenses were being revoked "immediately", as the notice to be given the owners was not contingent upon the ordinance as amended being made effective. In fact the amendment to the ordinance dealt with the future more than the past.

Point (2): As to findings and a reason for such action: In McQuillan on Municipal Corporations, 2nd Ed., Vol. 3, Sec. 1108, is found the following:

"Usually the power to license, regulate, etc., confers authority to provide reasonable terms and conditions under which the license business shall be conducted. The ordinance providing for the granting of the license may be revoked by the municipal authorities, and a license accepted under an ordinance providing that it may be revoked at pleasure or within the discretion of a specified municipal officer or board is binding on the licensee."

In the case of *State ex rel. Bluemound Amusement Park* v. *Mayor of City of Milwaukee,* 207 Wis. 199, 240 N. W. 847, 849, 79 A. L. R. 281, the court cited McQuillan on this point, and arrived at the following rule as governing the facts of that particular case:

"*  *  *  by virtue of the very terms of the ordinance under which relator claims the privilege of continuing to conduct an exhibition, the license, which he obtained, was subject to revocation for any reason which was stated in that ordinance. The only authority for the issuance of the license was the ordinance and, in obtaining and accepting a license under its provisions, the relator was bound by, and his license was subject to, the conditions as to revocation, which were prescribed by that ordinance. Consequently, when the relator obtained his license from the mayor, who, under the very terms of the ordinance, could grant or refuse such license, as seemed best to him for the good order of the city, the license thus obtained was subject to the power expressly reserved by ordinance for the revocation of such license, whenever the mayor considered it necessary or expedient for the good order of the city.  *  *  *."

The phrase "whenever said board shall deem it to be in the best interests of such city" found in Section 5720, is the authority under which the Board of Commissioners may act to revoke the present licenses, and the standard with which they must measure the necessity for such action. When "deem" is used in the ordinance it has the meaning of consider, judge, decide, or conclude (Webster), and the instruction to the Bureau of Mechanical Inspections to notify owners to remove their signs and the resolution to make the amendment to Section 5720 effective, indicate that the Board of Commissioners have considered, judged, decided, concluded, (deemed) it necessary. The presumption is that the City acted in good faith in the matter.

In paragraph 8 of the appellants' complaint they admit that the Board of Commissioners have "long considered" the advisability of withdrawing such licenses. The Board has concluded that such a move should be accomplished. In paragraph 2 of the proposed amended ordinance they recite that it is necessary to the "peace, health and safety of the public". Such a necessity is for the best interests of the City. The resolution passed, besides indicating a revocation of the license, approves the ordinance as amended —approves all parts thereof including paragraph 2. It is true the ordinance has not yet become effective though it has met the approval of the Commission, but its recitals evidence the theory upon which they acted in ordering the removal of the signs in question; and it is of record. If a reason is required, it is stated.

Point (3) : The order was for the removal of all signs in the parking, in the City. If some only were ordered removed, such, for instance, as only signs of motor lodge owners, then it might be argued that unless the City Commission could give a satisfactory explanation of why they selected only a few, their actions could be considered arbitrary and capricious. However, all signs which are within such parking in the City are included within the order. There has been no discrimination within the class. The State Legislature has seen fit to classify streets, sidewalks, public buildings and grounds as places where the City may "prevent" signs, and signposts. Sec. 15-8-26, U. C. A. 1943. Power is also given them to prevent and to remove obstructions and encroachments on the streets. Sec. 15-8-11, U. C. A. 1943. It would appear therefore, that the signs in question, located within the public streets, represent a classification which the Legislature has adopted as subject to the City's power of prohibition and removal. It is under these Code sections that the City seeks to control the use of the streets and pass such an ordinance as Section 5720. There are, by the Code several classes of structures: Those covered by Sec. 15-8-26, include signs and signposts such

as are involved here, as distinguished from overhead signs covered by Sec. 15-8-23, and incidentally by Sec. 5731 of the City Ordinances. The classification is one selected by the legislature.

The controversy narrows down to one of reasonableness of the City's action in removing a recognized class. We have previously indicated authorities which seem to hold that the retention of the power to revoke is sufficient to control this type situation. Another authority so holding is that of *Forbes* v. *City of Detroit*, 139 Mich. 280, 102 N. W. 740, 741, where the owner of a building was given permission to erect bay windows subject to the condition that they "shall be removed at any time when so directed by the common council." The court upheld the right of the council to order the windows removed in spite of the expense to which the building owner had gone. Said the court in that case:

"The express terms of the license give the right to the city to terminate it at will, and although it would have been better for Mrs. Forbes had the council not granted it in the first place, thus preventing her from the loss that she will suffer by its revocation, that cannot deprive the city of its reserved right, even if its power to grant the privilege be unquestioned. * * *"

We again call attention to the fact that the order in the case before us was to remove all signs from city parking, therefore no aspect of unreasonableness appears from any arbitrary or capricious action directed against some and not all owners of similar signs. The element of unreasonableness, if any, here involved is that claimed by the appellants by virtue of their allegations in their complaint that certain facts which might authorize and justify the removal of their class of signs do not exist. They allege in substance: That their signs are not such obstructions as to require prohibition because in Salt Lake City, trees are planted in the parking which are more of an obstruction of view and interference with safe use of the streets, that there are numerous utility poles in the parking which are

more unsightly and are greater obstructions to the safe use of the streets than are the plaintiffs' signs; that there are overhead signs in the congested areas of Salt Lake City, affixed to buildings and otherwise which protrude over and above the streets, and these signs are more dangerous to safe use of the streets than are plaintiffs' signs, and are greater obstructions to free and safe use of the streets than are plaintiffs' signs; and that none of these other uses, structures or obstructions are prohibited by the ordinances of Salt Lake City; that there are many uses which constitute encroachments upon use of streets, such as hanging signs, delivery chutes, elevators and receptacles, and excavations under sidewalks in congested areas—all used for business purposes; that they are equally if not more distracting and are greater in number; that advertisements are allowed on utility buses and delivery trucks, and sound trucks are allowed which constitute a greater traffic hazard than do plaintiffs' signs; that plaintiffs' signs are less dangerous as fire hazards than overhead signs, utility wires, guy wires, trees, delivery chutes, elevators and receptacles; that plaintiffs' signs are attractive and well kept, being no less attractive than uses permitted to private property owners. The enumeration of so many private uses of the public streets impresses one with the thought that the time has arrived to draw the line. A selection of signs in the parking may be that drawing.

However, in determining this question it is necessary to examine the fundamental ideas underlying the use of public streets. Streets from side to side, including the sidewalks and all area between are primarily for the public use. The public use is paramount. As stated in McQuillan, Municipal Corporations, 2nd Ed., Vol. 3, Sec. 981, at page 217:

"* * * In the control of streets and public ways the municipality is a trustee for the entire public, and as such trustee it should permit nothing to be done that will interfere with the condition of the streets or their free use by all alike * * *."

The interest of the public in the streets is characterized in the case of *Thompson* v. *Smith*, 155 Va. 367, 154 S. E. 579, 583, 71 A. L. R. 604, as follows:

Use of streets for ordinary purposes of life is a right. "It is not a mere privilege, like the privilege of moving a house in the street, *operating a business stand in the street,* or transporting persons or property for hire along the street, which a city may permit or prohibit at will." (Italics added.)

Similar pronouncements may be found in: *McGuire* v. *Wilkerson,* 22 Okl. Cr. 36, 209 P. 445; *Wood* v. *City of Chickasha,* 125 Okl. 212, 257 P. 286; *Child* v. *Bemus,* 17 R. I. 230, 21 A. 539, 12 L. R. A. 57; *Bainbridge* v. *City of Minneapolis,* 131 Minn. 195, 154 N. W. 964, L. R. A. 1916C, 224; and many others.

A further amplification along a line having importance to us in this inquiry is found in *Laing* v. *City of Americus,* 86 Ga. 756, 13 S. E. 107, wherein it is indicated that the fact that the structure for private enjoyment is confined to a part little used or not used at all is of no concern in the matter—it is still a nuisance and an encroachment on the public right. As to this point see also: McQuillan, 2nd Ed., Vol. 4, Sec. 1438.

Appellants in effect concede these rules since they concede that the respondent could prohibit the placing of any signs on or over the streets and sidewalks of Salt Lake City, and the rules relating to removal of a public nuisance are now too well established to be attacked. Appellants argue that any signs which offend reasonable rules under police power, should be ordered down on an individual basis, but so long as other type signs, such as overhead signs, are permitted by the City, the signs owned by the appellants must be allowed to remain. Any individual sign, of course, might be controlled if it offended under the police powers as it would be considered nuisance. What we are faced with here, however, is a ruling removing all signs within a well defined area and incidentally a prospective ordinance for-

bidding licensing or erection of such signs in such area in the future.

The Legislature by Sec. 15-8-11, and 26, U. C. A. 1943, granted the City the power to authorize obstructions to a certain extent if the City so desired, or the City could forbid them entirely if it so desired. Pursuant to that authority the City did authorize them subject to certain limitations and granted licenses subject to those limitations. The City elected to classify the signs as structures and license them. Had the City elected to classify them as obstructions and prohibit them originally under Sec. 5720, it seems clear that they would have been within the language and intent of the statute and such signs thereafter would have been forbidden. If then in the light of experience with such signs the City concludes it has made a mistake and desires to change the ordinance to place these same signs in the category of obstructions, a category in which it is reasonable to believe they may fit, we see no reason preventing them from doing so. Without the ordinance permitting the signs they would be obstructions and encroachments and could have been forbidden. There is nothing to prevent passage of an ordinance which would forbid them. This is merely a legitimate exercise of the authority delegated to the City, to determine the application of the statutes. We see nothing illogical or unreasonable in the City's action.

Point (4) : As we have previously indicated, the license granted the sign owners to erect their signs in city parking was at best a privilege and not a right. Appellants concede that the license gave them no property interest. In some cases licenses have been construed and treated as contracts with the result that the question has become one of impairing vested rights under such contract.

In the case of *State ex rel. Bluemound Amusement Park* v. *Milwaukee,* supra, it was held that an ordinance which left to the mayor the authority to revoke licenses "when-

ever he shall consider it necessary or expedient for the good order of the city so to do", left to the mayor only the administrative function of ascertaining the existence of facts because of which revocation is necessary or expedient for good order, and that such a delegation of police power was not void as failing to fix a standard for the mayor's action. Where the interest of the citizens affected is only a permissive interest, the generality of the standard of conduct, if a standard of conduct is required, may be very broad—in fact, some cases hold it to be merely a matter of discretion. See: 12 A. L. R. 1435; 54 A. L. R. 1104; and 92 A. L. R. 400, for annotations and cases. See also the quotation from McQuillan, 2nd Ed., Vol. 3, Sec. 1108, quoted above. In the Bluemound Amusement Park case, the contention was advanced that the ordinance was void as failing to affix any standard of conduct. The court answered this in the following language:

"* * * the common council has, by its legislative act, provided for revocation of the license whenever necessary or expedient for the good order of the city, and has left to the mayor only the administrative function of ascertaining the existence of facts because of which revocation is necessary or expedient for such good order. * * *"

Under such a view, the authority of the Board of Commissioners in the present case "deeming it in the best interest of the city" differs very little from administrative functions referred to in the Amusement Park case. See also: *Keane* v. *Strodtman*, 323 Mo. 161, 18 S. W. 2d 896. It should further be kept in mind that the Board of City Commissioners were also a legislative body empowered by Statute to affix the standard in cases such as this.

If a standard was fixed, which we believe to be the fact, though a very general one, then it is not necessary to go so far in this case as was done in the case of *City of Eureka* v. *Wilson*, 15 Utah 53, 48 P. 41; appealed to the United States Supreme Court, 173 U. S. 32, 43 L. Ed. 603, 19 S. Ct. 317, affirming this court.

That case involved an ordinance leaving to the sole discretion of a municipal officer the power to permit or refuse permission to move buildings through the streets. The mayor refused permission to Wilson who nonetheless moved a building. His defense in a criminal action against him was that the ordinance was unconstitutional as establishing no standard to guide the administrative official. The courts upon appeal sustained the ordinance as constitutional, ruling that here was a special privilege relating to the use of the streets which need not be subject to a set standard, that it was a discretionary matter. The appellants seek to distinguish this case as being such an extraordinary use of the streets as to not require a standard to be set up, it being assumed that the authorities will not abuse their discretion. Factually there may be a difference, between the cases, in that signs on streets are more numerous than are the instances of moving of houses in streets; but in theory the two cases are the same.

We are of the opinion that the judgment of the lower court must be affirmed. It is so ordered.

WADE and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring in the result).

I base my concurrance on the following reasons: The parkways are part of the public streets, designed for the use of the public whether the fee thereof is in the city or in the abutting owner with an easement in the public, and are under the control of the city commission. Any use of these parkways for private purposes is subject to revocation. In this case the license to use them itself contained a condition that such license could be revoked at any time whenever the City Commissioners "deem it to be to the best interests of the City." The express reservation to revoke is not dependent on a showing that it is to the best interests of the city, but on the fact that the City Commissioners deem it to be to the best interests of the city. There is

nothing to show that such judgment of the city was not in good faith, nor is there in this case any question of discrimination between two licensees situated alike. The discrimination is between classes who are differently situated. A classification is always legitimate where there is a reasonable basis for the classification provided all persons in the class are similarly situated. See *State* v. *Mason*, 94 Utah 501, 78 P. 2d 920, 117 A. L. R. 330. I see no reason why licenses granted on terms reserving a right of revocation may not be revoked at any time the Commissioners deem or believe it to be for the best interests of the city, giving a reasonable time to remove the signs. There is no showing that the licensees have not had a reasonable time to remove the signs.

For the above reasons, I concur. I deem it unnecessary to agree to any of the other propositions set out or statements contained in the main opinion. I confine myself to the reasons stated above.

LATIMER, J., concurs with the views expressed in the opinion of WOLFE, J.