**The STATE of Utah, Plaintiff and Respondent,**

v.

**Richard Allen BRADSHAW, Defendant and Appellant.**

**No. 14060.**

Supreme Court of Utah.

Oct. 16, 1975.

Michael W. Park, Cedar City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, John O. Christiansen, Beaver County Atty., Beaver, for plaintiff-respondent.

TUCKETT, Justice:

After a trial de novo in the district court, defendant was found guilty of violating Sec. 76-8-305, U.C.A.1953, as amended, which reads as follows:

> A person is guilty of a class B misdemeanor when he intentionally interferes with a person recognized to be a law enforcement official seeking to effect an arrest or detention of himself or another regardless of whether there is a legal basis for the arrest.

The defendant was sentenced to serve six months in the county jail. From the verdict and sentence the defendant has appealed claiming that the statute above referred to is invalid on constitutional grounds.

The complainant is a policeman of Milford City, Beaver County, Utah, who observed the defendant driving an automobile on the streets of that city. The officer followed the defendant to a service station where he informed the defendant that he was going to issue the defendant a citation for driving while his driver's license was suspended. After the defendant had completed the purchase of gasoline he drove away from the service station a short distance to a hotel where he resided. The officer followed the defendant in a patrol car with the siren going. At the hotel, the officer informed the defendant that he was under arrest for resisting arrest, at which time the officer pulled his revolver from the holster. The defendant tapped the officer on the chest and told the officer that he did not have the "guts" to shoot, whereupon he left the scene and entered the hotel. At the service station where the officer first accosted the defendant, the officer did not ask the defendant to produce a driver's license. The accusation that the defendant was operating an automobile during suspension was untrue, and the defendant did in fact have a valid driver's license.

It is doubtful whether or not the record supports the conviction of the defendant inasmuch as the officer made no effort

to take custody of the defendant, and it is doubtful whether or not the act of the defendant in simply ignoring the officer is an interference with him. On appeal we are only concerned, however, with the defendant's challenge to the statute. In passing we point out that the officer accused the defendant of violation of the Motor Vehicle Code, and the provisions of that code should have been followed by the officer in dealing with the purported violation. The provisions of Sec. 41–6–166, U. C.A.1953, are controlling in situations similar to the one herein. A pertinent part of that section is as follows:

Whenever any person is arrested for any violation of this act punishable as a misdemeanor, the arrested person shall be immediately taken before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of such offense and is nearest or most accessible with reference to the place where said arrest is made, in any of the following cases:

(1) When a person arrested demands an immediate appearance before a magistrate.

\*   \*   \*   \*   \*   \*

(4) In any other event when the person arrested refuses to give his written promise to appear in court as hereinafter provided, or when in the discretion of the arresting officer, a written promise to appear is insufficient.

On appeal the defendant contends that the statute under which he was charged and convicted is invalid in view of the provisions of Article I, Section 14, of the Utah Constitution, which reads as follows:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.

While the particular problem raised has not been before this court, the language of the Utah Constitution was taken verbatim from the language of the Fourth Amendment to the Constitution of the United States. The United States Supreme Court in dealing with the particular problem in the case of *Terry v. Ohio,*[1] at page 16 of the U. S. Reports, 88 S.Ct. at page 1877 had this to say: "It is quite plain that the Fourth Amendment covers 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." That case went on to hold that arrests without a warrant may only be made upon probable cause. Other decisions of the U. S. Supreme Court are to the same effect.[2]

The language of the particular statute we are here dealing with is undoubtedly subject to the constitutional challenge of vagueness. That part of the statute "regardless of whether there is a legal basis for the arrest" may be subject to various meanings and interpretations. If the intention of the legislature was to penalize a law-abiding citizen by incarceration because he did not willingly submit to an unlawful arrest, a statute authorizing the same is in violation of both the Utah and United States Constitutions as above referred to in that it permits and authorizes an arrest without probable cause and without lawful basis for the arrest. Likewise the word "interferes" as used in the statute without further definition or elabora-

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

2. *Henry v. U. S.,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; *Wong Sun v. U. S.,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Wright v. Georgia,* 373 U.S. 284, 83 S.Ct. 1240, 10 L. Ed.2d 349; *People v. Curtis,* 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33.

tion may mean any protest or verbal remonstration with an officer as well as the employment of physical force to avoid an arrest. We are of the opinion that the language of the statute as above pointed out fails to inform an ordinary citizen who is seeking to obey the laws as to the conduct sought to be proscribed. The statute in the particulars above referred to is in violation of the Constitution of this State and the United States and therefore invalid.

This matter is reversed and remanded to the district court to dismiss the complaint.

MAUGHAN, J., concurs.

HENRIOD, Chief Justice (concurring).

I concur, the while conceding that this may be a close case, and that the arguments of the dissents about law and order and the integrity of the constabulary, are peals of optimism for a desired socio-political community. Nonetheless, I am convinced that they have neglected the liberty bell, whose chimes presumably reach the ears not only of the shackler but the shacklee, and presumably reflect each's constitutional prerogative of equality,—the hallmark of which is reasonableness. I take it that any set of circumstances that outdistances such sounds might be said to constitute a journey out of the realm of constitutionality as we understand it.

In this case the officer in the first instance said he was going to issue the defendant *a citation* for driving while his license was suspended. He did not arrest him, or threaten him with an arrest. Millions of citations are issued daily without an arrest. The defendant did not object to a citation, nor did he resist an arrest at that time, but drove away a short distance followed by the officer, who arrested him, claiming he resisted arrest,—not borne out by the facts.[1]

The confrontation here was attended by the officer drawing his pistol,—necessary, perhaps, in a television scenario, but hardly under the circumstances of this case. True it is, as the dissent urges, that the circumstances of a case may have nothing to do with the *constitutionality* of a statute, —but they may have everything to do with the question of *unconstitutionality* of a statute applicable to the facts and basic issue here. They had a lot to do with Hitlerism, and in my opinion, the subject statute conceivably may be knocking at the door of some such eventuality. In such case I differ with my dissenting learned colleagues to the effect that the prevailing presumption is in favor of constitutionality justifying a six-month stretch in jail. In my book, where there is a statute that sanctions an arrest of a citizen by a "recognized" law enforcement officer, popularly looked upon as a person in a blue, brass-buttoned suit, ornamented with a silver star over his heart (but who may be an imposter in rented garb), which citizen is minding his own business, as here, where the non-interference was non-violent but simply by driving away, "regardless of *whether there is a legal basis for the arrest* or not, as was the case here, just has to be unconstitutional. In such case, the presumption in favor of constitutionality successfully is rebutted, and as generally is the rule, disappears, and the presumption of innocence that always attends a defendant, destroys the former, the latter to persist. Facts well may be instrumental in its persistence.

The dissents say there is no constitutional question here since there is no search and seizure problem involved. The main opinion points to *Terry v. Ohio* [2] and other authorities [3] that seem to disagree,—which authorities have my preference over such unsupported generality.

1. One of the dissents suggests that we must ignore the facts, they being the function of the jury. Another suggestion seems apropos that without the facts, the unconstitutionality of a statute is a subject only of a declaratory judgement that ignores the fact of constitutional right of liberty.

2. Footnote 1, main opinion.

3. Footnote 2, main opinion.

I respectfully disagree with the gratuity in one of the dissents to the effect that "Nowhere in the statute can it be found that an unreasonable arrest is permitted or encouraged." I suggest the subject statute both permits *and* encourages an unreasonable—and I think unconstitutional—arrest when it says it is unlawful to interfere with a "law enforcement official," [4] who tries to make an arrest *"whether there is a legal basis for the arrest"* or not. In other words, a peaceful citizen is forced by legislation to become his own jail bait if he "interferes" [5] with a law enforcement official making an arrest, no matter how outrageous, vicious or stupid it may be,—and if such citizen uses means that the statute seems by implication or legerdemain, to be an arbitrary exercise of poor judgment, but in doing so interferes with an officer, —it costs him six months deprivation of his liberty.

Consider also, the case where an over-zealous, eager officer obviously is using excessive force to subdue a teenager to the point where bystanders honestly believe he is about to kill him, or where a drunken officer with a badge is arresting and beating a perfectly innocent citizen, or where a cop at a football stadium goes berserk and at the point of a gun attempts to arrest everyone in front of him, or a game warden, in a remote wilderness area, out of sheer suspicion manhandles a hunter minding his own business, or an off-duty law enforcement officer in civilian clothes, but "recognized" as a Bobbie, tries to arrest his neighbor on a trumped-up charge, —or *this very case, where the officer arrested an innocent person who had a valid license,* who offered no interference whatever except to touch his fellow townsman, an officer, and actually walked away from an incident that the officer, not he, created.

The facts and hypothetics recited here are not for the purpose of deciding this case on the facts, which one of the dissents erroneously said we *could* do, but to demonstrate the vagueness of the statute, and the door it opens ostensibly, on a pretext of false constitutionality, to events leading to an unconstitutional invasion of the constitutional right against unreasonable seizure, a guaranteed right of privacy and a constitutional assurance of right of free locomotion and freedom from harassment and incarceration,—all in virtue of a statute that presents a ridiculous discrimination in favor of a law enforcement official and against an erstwhile law-abiding citizen who becomes a jailbird at the expense of the mistaken, and what is worse, the illegal act of an arresting official. To me this adds up to an Eleventh Commandment, to go hence and defy the law hiding behind a badge, and let him who is without sin, but interferes in the lawlessness, to serve the sentence.

It seems to me to be somewhat of a departure from reality and practicality and even morality to say a statute is constitutional that says one person can violate the law and by virtue of such illegal act induce another to indulge in a confrontation which he did not seek and get six months because a possible tormenter, acting illegally, goaded him into it. It is a rather superficial answer to say, as do the dissenters here, that having perhaps unwittingly "interfered" in an arrest, with the sometimes ludicrous and chameleonic meaning that

---

4. Which could be numbered in the dozens, such as sheriffs, deputies, city policemen, town policemen, school crossing guards, constables, town marshals, judges of various hues, game wardens, treasury agents, tax collectors, campus policemen, truant officers, forest rangers, justices of the peace, district court judges, Supreme Court Justices, sanitarians, agricultural agents, special police, meter maids, etc., ad infinitum.

5. "Interferes" carries with it a multiple connotation so vague as to render a statute unconstitutional, in my opinion. Does one interfere with an officer if he heckles him, refuses to leave the scene of a demonstration in which a person is being arrested, is a curiosity seeker at a fire where a suspected arsonist is being apprehended, a physician attempting to administer to a dying man who is being arrested, etc.?

someone "might" attach to the word, the "interferer," acting in good faith, not having read this funny statute, should be content to lose his job, his good name in the community, his liberty for six months, and his respect for the establishment, in exchange for the great privilege of hiring a lawyer, going to court to seek damages (which are no substitute for loss of freedom),—all because one of the countless hordes of law enforcement officials not only committed a pediculous, but illegal rip-off in making what is worse, the arrest of a person who at common law had a perfect right to resist, and who, but for this paternalistic, autocratic legislation in a free society, could resist arrest, and who as of now, *can* resist arrest if it happens to be classified as a *citizen's* arrest.

This statute does not have any semblance of a reasonable, constitutional statute prefaced by a warning requirement of some kind, a reasonable request that the citizen show something, or that under the circumstances "probable cause" appears to justify an arrest, or "that there is reason to believe an offense has been or is about to be committed."

One of the dissents asserts that it appears that the majority "is influenced by the facts of the case and seeks an impermissible way to correct what it considers a bad verdict." Although this statement may be permissible gratuity as to others in the majority triumvirate, it is not so as to this author, since he was influenced by the provisions of the *statute* as being a constitutionally *impermissible* way to correct what I consider to be a bad and vague treatment of a citizen's constitutional right.

One of the dissents suggests that "The main opinion is at some pains to explain how the police officer could have handled this apparently arrogant and belligerent defendant in a different manner." It does not take much imagination to answer that question. The officer easily could have

checked with the Motor Vehicle Department, to determine if his fellow townsman had a valid license, in which event he would have found that he *did* have such license. Or he calmly could have handed a citation to defendant or placed it on his car, or left it at his home, or mailed it to him. It is suggested that the dissent "is at some pains" to explain why the officer did not do one of the things mentioned above, or why impetuous, unreasonable police officer threatened the defendant by drawing his gun, and why he committed a breach of the peace in the process of what proved to be an unlawful arrest,—an act the prevention of which the dissents both say was the very purpose of the statute they say is salutary in *keeping* the peace.

In passing, it is noted that neither of the dissents cites any authority that really supports the rule provided in the statute here. One, *Miller v. State,* a 1969 Alaska case (462 P.2d 421), at first blush would seem to. It may be pointed out, however, that the court there laid down a rule of law having no codification, which was similar to the provisions of our statute, saying that at least one state court had recommended such a rule as a matter of its common law development, being *State v. Koonce*, 89 N.J.Super. 169, 214 A.2d 428, 1965,—an intermediate court but not the court of last resort, the New Jersey Supreme Court. However, the *Miller* case, supra, pulled its punches on any constitutionality question, which was not even raised in the case, when it said "It should be noted that the rule we formulate today has no application when the arrestee apprehends bodily injury, or when an unlawful arrest is attempted by one not known to be a peace officer. Quite different problems are then present." On the strength of such hedging, it is suggested that this case, the only one cited in the dissent, certainly would be undispositive in an attack on a statute's constitutionality on the ground of vagueness.[6]

---

6. Two other cases cited in the dissent, *Rosenberg v. State*, and *State v. Byrne*, are Florida cases decided in Appellate Division Courts, inferior courts not having the authoritative weight of the Florida Supreme Court, having the same subordinate stature of *State v. Koonce*, supra.

I am of the opinion the statute cannot stand a true test of constitutionality based either on a claim of 1) vagueness or 2) unreasonable seizure.

ELLETT, Justice (dissenting).

I can agree that there was no basis for an arrest, but cannot agree that the statute is contrary to the provision of our constitution. It does not permit an unlawful seizure (arrest). It merely transfers the right of redress for a wrongful arrest to the orderly procedure of a court trial instead of a brawl in the streets.[1]

The question of lawfulness of an arrest may be a close one, and a brawl may result in a killing. The legislature was wise in passing the statute in question in the interest of maintaining order and preventing confrontations which might lead to bloodshed. Nowhere in the statute can it be found that an unreasonable seizure (arrest) is permitted or encouraged. There is no change in the law that one making an unlawful arrest must answer for it, and so there is no basis for saying the statute conflicts with the Constitution.

The common law gave a person the right to resist an unlawful arrest, but times have changed since the time when self-help was permitted to prevent a wrongful arrest. At common law, arrests were often made by citizens. Judges were not available for speedy release on bond, and trials were long delayed. Such conditions no longer exist. An arrested person must be taken forthwith before a magistrate, and trials must not be unreasonably delayed.[2] A defendant is entitled to bail in a reasonable amount.[3] Besides the statute does not prevent resistance to an unlawful arrest when made by a private person. It only applies to arrests made by a known police officer.

By both our constitution[4] and statute,[5] the ruling of the district court in cases appealed from a justice of the peace court is final except as to cases involving the constitutionality of a statute.[6] This matter is such a case, and so we must limit our review to the determination of whether the statute is invalid. We may not review the facts of the case.

It appears that the prevailing opinion is influenced by the facts of the case and seeks an impermissible way to correct what it considers a bad verdict.

That is the function of the trial court—not that of an appellate tribunal. If we wish to be jurors, we should renounce our position as justices and wait until our names are drawn for jury service.

In reviewing a statute to ascertain its constitutionality, certain rules of construction must be applied:

(a) A legislative enactment is presumed to be valid and in conformity with the constitution.[7]

(b) It should not be held to be invalid unless it is shown beyond a reasonable doubt to be incompatible with some particular constitutional provision.[8]

(c) The burden of showing invalidity of an ordinance or statute is upon the one who makes the challenge.[9]

1. *Miller v. State*, 462 P.2d 421, 426 (Alaska 1969); *Rosenberg v. State*, 264 So.2d 68; *State v. Byrne*, 311 So.2d 764; See Annotation in 44 A.L.R. 3rd at p. 1087 for cases holding it a crime to resist a known officer when making an arrest even absent a statute like ours.

2. Art. I, Sec. 12, Utah Const.

3. Art. I, Sec. 9, Utah Const.

4. Art. VIII, Sec. 9, Utah Const.

5. Sec. 78-3-5, U.C.A.1953.

6. *Eureka City v. Wilson*, 15 Utah 53, 48 P. 41, affd. 173 U.S. 32, 19 S.Ct. 317, 43 L.Ed. 603 (1897); *State v. Holtgreve*, 58 Utah 563, 200 P. 894, 26 A.L.R. 696 (1921); *American Fork City v. Robinson*, 77 Utah 168, 292 P. 249 (1930).

7. *Trade Commission v. Skaggs Drug Centers, Inc.*, 21 Utah 2d 431, 446 P.2d 958 (1968); *Snow v. Keddington*, 113 Utah 325, 195 P.2d 234 (1948).

8. Cases cited note 1 supra.

9. *Trade Commission v. Skaggs Drug Centers, Inc.*, supra note 7.

In the case of *State v. Packard* [10] it was said:

It is recognized that statutes should not be declared unconstitutional if there is any reasonable basis upon which they may be sustained as falling within the constitutional framework [citations omitted], and that a statute will not be held void for uncertainty if any sort of sensible, practical effect may be given it. [Citations omitted].

The Supreme Court of the United States in *Roth v. U. S.* [11] said:

. . . This Court, however, has consistently held that lack of precision is not itself offensive to the requirement of due process. ". . . [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices . . ." *United States v. Petrillo*, 332 U.S. 1, 7–8, 67 S. Ct. 1538, 91 L.Ed. 1877.

The case of *Sunset Amusement Co. v. Board of Police Commissioners of City of Los Angeles* [12] is in point:

. . . It should be kept in mind that there are an infinite variety of activities or conduct which could result in potential or actual danger to the "peace, health, safety, convenience, good morals, and general welfare" of the public. A municipality cannot reasonably be expected to isolate and specify those precise activities or conduct which are intended to be proscribed. As stated in *Daniel* [*Daniel v. Board of Police Com'rs,* 190 Cal.App.2d 566, 12 Cal.Rptr. 226] quoting from an earlier case, "To make a statute sufficiently certain to comply with con-

stitutional requirements [of due process of law] it is not necessary that it furnishes detailed plans and specifications of the acts or conduct prohibited."
. . .

The author of the prevailing opinion apparently doubts that the statute violates the constitutional provision regarding unreasonable seizures as *claimed by the appellant.* He seems to buttress the decision on the constitutional challenge of *vagueness.* This claim is personal to the author of the opinion, and was not raised either at trial or on appeal.

I can see nothing vague about the language of the statute in question. Any person of ordinary intelligence should know that when a known officer is making, or attempting to make, an arrest, self-help or lay interference is prohibited by the law.

In my opinion the statute is not unconstitutional, and we are duty bound to so say and to affirm the judgment.

CROCKETT, Justice (dissenting).

With due respect to our disagreeing colleagues, I am impelled to state that the majority opinion impresses me as a strained effort to cast the statute in a light different from its true intent and meaning for the purpose of making it appear to be unconstitutional and striking it down. It is my judgment that such a ruling is contrary to sound principles of law and considerations of policy. In addition to the cogent and correct observations of Justice Ellett, including: that a legislative enactment should not be so nullified unless it is violative of some constitutional provision beyond a reasonable doubt, I offer some further comments.

First, I re-emphasize that this statute *does not authorize a peace officer to make*

10. 122 Utah 369, 373, 250 P.2d 561, 563 (1952).

11. 354 U.S. 476, 491, 77 S.Ct. 1304, 1312 1 L.Ed.2d 1498 (1956).

12. 7 Cal.3d 64, 101 Cal.Rptr. 768, 773, 496 P.2d 840, 845 (1972).

*an unlawful arrest.* Nor does it authorize the *seizure* of any person or property. It does not deal with when or under what circumstances the lawful arrest may be made. That subject is dealt with elsewhere in the law.[1] Neither does it in any way adversely affect or deprive any person who is subjected to an improper or unlawful arrest of any right or remedy he has always had under the law. It seems inescapably plain to me that the *sole purpose of this statute is to safeguard against interference with a peace officer who is attempting to make an arrest,* to the end that violence may be avoided.

This statute may be different than you or I, or the other justices of this court may desire it to be, or would have drafted it, had that been their responsibility. But I certainly do not think it is beyond the realm of rationality to see it as the expressed will of the people of this State, acting through their legislature, that when any duly authorized peace officer is attempting to make an arrest, no citizen should interfere with him. If the arrest proves to be improper or unlawful, whoever is aggrieved thereby is not without the remedies the law gives him, both in that case if it comes to court, and/or in another if he wants to sue. All this statute does is to make it a misdemeanor if he presumes to judge the lawfulness of the arrest, and interferes with the officer in the performance of his duty.

In considering whether it is within the power of the state legislature to enact such a statute it is important to have in mind that, as contrasted to the federal government, which has only those powers expressly granted to it, the legislature of this State has all of the powers of sovereignty, except only as expressly limited or prohibited by the constitution.[2] It therefore has the power to enact any law or regulation calculated to preserve the peace and good order of the citizenry, unless some constitutional provision prohibits it.

The provision of our Constitution quoted and relied on as nullifying the statute is Section 14, Article I, relating to *searches* and *seizures.* It is submitted that if that section is considered in its total context, as rules of construction require, it will be seen that the purpose of that section is in accordance with its title "Unreasonable *searches* forbidden—Issuance of warrant"; and that it is dealing with the invasion of privacy by unreasonable searches and seizures of persons, houses, papers and effects and when the issuance of a warrant is necessary for that purpose, and not with the matter of making an arrest of the nature involved here. I therefore do not see how that constitutional provision can properly be regarded as preventing the legislature from enacting a peace and good order statute such as the one in question, nor how it has any application to the situation dealt with in this case.

We should look at the composite of this fact situation in a light supportive of the jury verdict, approved by the trial court in his denial of motion to set it aside. But, let it be conceded that the police officer may have been mistaken concerning the defendant's having a revoked driver's license. The main opinion is at some pains to explain how the police officer could have handled this apparently arrogant and insolent defendant in a different manner. It wholly ignores the proposition that if this defendant had not been a person of that disposition, and if he had a valid driver's license on him as the law requires, he could

1. See Title 77, Ch. 13, Utah Code Ann.1953.

2. To avoid repetition on this subject here, see statement in *Wood v. Budge,* 13 Utah 2d 359, 374 P.2d 516, and authorities therein cited.

have avoided any difficulty for himself or the police officer by simply so stating and exhibiting the license. But he chose the contrary course which resulted in the difficulty in which he finds himself.

I cannot see it as consistent with my judicial duty in the light of what I regard as correct principles of law and sound policy to align myself with the position of this defendant who obviously manifests a disposition to flout the law and authority, and place the burden of exemplary behavior on the peace officer who is trying to enforce and uphold it. It is my impression that, quite different from the view taken by the jurors and the trial judge, the possibility exists that some members of the court may view the fact situation in this case as offensive to their sense of justice. If this be so, and the ends of justice require overturning the verdict, this court could very well do so by deciding that the peace officer was wrong and that there was no justification for finding that the defendant was "interfering" with the peace officer making an arrest. I could not agree with that solution, believing that to be the prerogative of the jury and the trial court. But in my judgment that would be a solution more nearly rational and in conformity with proper judicial function and prerogative than to strike the statute down to rectify one seemingly harsh case. This would also be in harmony with the well-established principle of constitutional law: that the court should not declare a statute unconstitutional if the case can be decided on other grounds.[3]

In any event, it should be indicated that it is unconstitutional only as applied when a person resists arrest as to himself or his family, and not remove its effect from other situations where its salutary purpose should be preserved.

3. See *Heathman v. Giles*, 18 Utah 2d 368, 374 P.2d 839; 16 Am.Jur.2d 301.